**Roland GIGUERE**

v.

**INHABITANTS OF the CITY OF AUBURN.**

Supreme Judicial Court of Maine.

Aug. 14, 1978.

Edwin R. Michniewich (orally), Auburn, for plaintiff.

Linnell, Choate & Webber by G. Curtis Webber (orally), Auburn, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

NICHOLS, Justice.

The Plaintiff, Roland Giguere, sought a declaratory judgment in Superior Court in

Androscoggin County that a "pole barn" located on his land in the City of Auburn was so related to the farm activities he carried on there as to be a permitted use under the City's zoning ordinance. The Defendant City counterclaimed for injunctive relief. By agreement, and pursuant to Rule 53(b)(1), M.R.Civ.P., the matter was heard by a referee. The referee found for the Defendant City upon both the complaint and counterclaim. When the referee's report was adopted and judgment was entered accordingly in the court below, the Plaintiff brought the case here on appeal.

We deny the appeal.

In October, 1976, the Plaintiff had applied for, and received from the Defendant City, a permit to construct a pole barn for hay storage. As construction ensued the Defendant's building inspector visited the site, observed features he thought foreign to a pole barn, and issued a stop order. The stop order was rescinded upon some change in the specifications and upon the condition that the structure "be used for farming use only." The building inspector warned the Plaintiff not to undertake a non-conforming use at the risk of prosecution for any violation.

Sometime during 1976 (the record being silent as to the precise date) the Plaintiff entered into an arrangement with a New Jersey firm which recycles bakery waste into animal feed. Pursuant thereto the Plaintiff trucked barrels of such waste from an Auburn bakery to his farm, where the barrels were dumped into a trailer dump-body parked at the loading dock beside his pole barn. When this trailer was full, the Plaintiff hauled the bakery waste in bulk to New Jersey. For the return he "trip-leased" the vehicle to the same New Jersey firm to transport its animal feed product to several points in Maine. The Plaintiff was able to gross about $1,500 per trip and to make two or three trips per week.

■ The Plaintiff contends that the described use of his pole barn is an agricultural use permitted by the Auburn Zoning Ordinance.[1] Specifically, the Plaintiff urges that the described transfer of bakery waste constitutes "processing, handling, storage and sale of agricultural produce, services and supplies."

We do not agree.

The bakery waste is bread and dough excess that does not become part of the final product of the local bakery. After its transfer to New Jersey and processing by the firm there it becomes a constituent of animal feed.[2] The Plaintiff participates in the process of gathering the materials for a manufacturing process in New Jersey. It is not reasonable to interpret the zoning ordi-

---

1. Section 4.13 of the Zoning Ordinance provides in pertinent part as follows:

   The uses permitted in the Agriculture and Resource Protection District hereafter set forth have been restricted in order to allow for conservation of natural resources and open space land, and to encourage agriculture and forestry and certain types of recreational uses. These areas shall be protected and conserved because of their natural, aesthetic, and scenic value, because of their economic contribution to the City, and because these areas are so remote from existing centers of development that any uncontrolled growth could result in an economic burden on the City and its inhabitants. This section shall therefore be construed so as to effectuate these purposes and to prevent any attempt to establish uses which are inconsistent with or represent an attempt to evade the policies for limiting and controlling development in this district.

   The following uses are permitted in Agriculture and Resource Protection Districts:
   (a) Farming of field crops, row crops, orchards, truck gardens, plant and tree nurseries, greenhouses, woodlands, pastures and fields with all land, building equipment and machinery and buildings accessory to the same including but not limited to the following: barns, sales, service and storage of farm equipment and machinery; processing, handling, storage and sale of agricultural produce, services and supplies.

2. The record indicates that the Plaintiff used some of this bakery waste, without further processing, as feed for his own livestock and also made deliveries of such bakery waste to four local customers. This use by the Plaintiff, and these deliveries by him were accomplished without transfer of the waste at his pole barn and without utilizing a trailer dump body parked there or elsewhere.

nance here invoked so broadly as to encompass this Plaintiff's described activities within the processing or handling of agricultural services and supplies. *See Parrish v. Board of Appeal of Sharon*, 351 Mass. 561, 223 N.E.2d 81, 85–86 (1967). In sum, the storage and transfer of bakery waste at the Plaintiff's pole barn is not a permitted use under § 4.13(a) of the subject ordinance.

■ In the alternative the Plaintiff contends that his pole barn is an "accessory building" expressly permitted by § 4.13(a). That term is defined in § 2.1 of the subject ordinance as follows:

> For the purposes of this chapter, the following words and terms as used herein shall have the meanings or limitations of meaning hereby defined, explained or assigned:
>
> (a) ACCESSORY BUILDING: a building used for a purpose which is clearly subordinate or incidental to that of the principal building or to the principal use of the land and which is located on the same lot as the principal building or use.

The record demonstrates, however, that the Plaintiff's principal occupation is the bakery waste business, and that he sells no farm produce. The referee found that the Plaintiff's income from farming was negligible.

Furthermore, the record discloses that the Plaintiff constructed the pole barn more than 250 yards from the structure where his hay is stored and his four beef cattle are kept. The meat produced by keeping these cattle, two pigs and some poultry is consumed by the family. Two horses are kept for the Plaintiff's daughter to ride.

With the structure here in controversy used primarily as a loading dock for bakery waste, and with such bakery waste transferred elsewhere for processing into animal feed, we conclude that the pole barn is not an accessory building within the meaning of the subject ordinance.

The entry will be:

Appeal denied.

Judgment affirmed.

McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ., concur.

GODFREY, J., did not sit.