**Alvin G. MACK and Pya C. Mack**

v.

**MUNICIPAL OFFICERS OF the TOWN OF CAPE ELIZABETH.**

Supreme Judicial Court of Maine.

Argued Jan. 13, 1983.

Decided July 29, 1983.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Ralph L. Lancaster (orally), Daniel M. Snow, Portland, for plaintiffs.

Kelly, Remmel & Zimmerman, John N. Kelly, Graydon G. Stevens (orally), Portland, for defendant.

Before GODFREY, ROBERTS, CARTER,* VIOLETTE and WATHEN, JJ.

GODFREY, Justice.

The municipal officers of the Town of Cape Elizabeth ("Town") appeal from a judgment of the Superior Court, Cumberland County, reversing a decision of the Cape Elizabeth Board of Zoning Appeals ("Board") that denied the plaintiffs Alvin G. and Pya C. Mack a building permit. The Macks cross-appeal from one finding of the Superior Court that was adverse to them.

The Macks seek to build a house on Trundy Point, a small peninsula of land they own in Cape Elizabeth. On November 5, 1981, the town building inspector denied them a building permit on the ground that the proposed structure failed to meet the setback requirements of the applicable zoning ordinance. The Macks appealed unsuccessfully to the Board. After a public hearing in December, 1981, the Board unanimously upheld the inspector's denial of the permit. The Board also decided that the Mack's proposal did not qualify for an exception to the setback requirements.

In January of 1982, the Macks filed a six-count complaint in Superior Court pursuant to M.R.Civ.P. 80B challenging the Board's decision. Their complaint included two counts reaching beyond the scope of direct judicial review: Count V alleged that the zoning ordinance, as applied, deprived the Macks of property without just compensation in violation of the United States and Maine Constitutions; Count VI alleged that the town should be estopped from denying the building permit because of certain representations of the building inspector to an agent of the Macks before they purchased the property. The town moved to dismiss Counts V and VI for failure to state a claim

---

* Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

upon which relief could be granted. After a nontestimonial hearing on the issues raised by the Macks' appeal and the town's motion, the Superior Court, in a judgment entered on July 19, 1982, ordered the Board to issue the Macks a building permit. The court upheld the Board's finding that the Macks had not met the setback requirements but reversed the Board's denial of an exception to those requirements. Because of its disposition of the case, the court did not address Counts V and VI of the complaint.

## I. *Exception to the Setback Requirements*

The Macks' proposed building site is subject to section 19–3–6 of the Cape Elizabeth zoning ordinance because it is within 250 horizontal feet "of the normal high water mark of . . . [a] salt water body." Section 19–3–6(i) requires that residences and other improvements be set back certain specified distances from the water. However, the Board may reduce setback requirements pursuant to section 19–2–8(c) on a finding that the reduced setback will satisfy the following nine criteria:

(1) will not result in unsafe or unhealthful conditions;

(2) will not result in erosion or sedimentation;

(3) will not result in water pollution;

(4) will not result in damage to spawning grounds, fish, aquatic life, bird or other wildlife habitat;

(5) will conserve shoreland vegetation;

(6) will conserve visual points of access to waters as viewed from public facilities;

(7) will conserve actual points of public access to waters;

(8) will conserve natural beauty; and

(9) will avoid problems associated with flood plain development and use.

The Board denied the Macks' application for reduced setbacks, finding that their request failed to meet the first and eighth criteria for the following reasons:

'1. Will not result in unsafe or unhealthful conditions': the Board found that wave action could make the residence unsafe for its inhabitants, that storm action could so damage the entrance drive as to leave the inhabitants isolated in a dangerous position, that damage to the drive could have damaging and unhealthful effects on the marsh, and that the raised drive could increase the hazards of extreme storm and tidal effects on neighboring property;

'8. Will conserve natural beauty': the Board found that the proposed building location is exceptional so that almost anything constructed there would detract from its natural beauty, that the proposed drive could lead to the beach and marsh being damaged or washed out with the loss of their natural beauty, and that while the proposed residence might be handsome, and might not block views of the ocean from public facilities, it would detract from the natural beauty of the setting.

The Superior Court held that the Board's factual findings that the proposed house would be unsafe and would not "conserve natural beauty" were not supported by substantial evidence on the record. The court further found, as a matter of law, that denial of the building permit solely for aesthetic reasons was unconstitutional. Since the Board had determined that the Macks' proposal satisfied the other seven criteria for an exception, the court ordered the Board to issue the Macks a permit.

The standard of review is whether the Board abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record. *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me.1982). No presumption of validity attaches to the Superior Court judgment where, as here, the Superior Court makes its decision entirely from the record developed at the zoning board of appeals level. *Gulick v. Board of Environmental Protection*, 452 A.2d 1202, 1209 n. 6 (Me.1982). An appellate court, in reviewing zoning board

action, is not free to make findings of fact independently of those found by the municipal zoning authority. It may not substitute its judgment for that of the municipal body, but is limited to determining whether, from the evidence of record, facts could reasonably have been found by the zoning board to justify its decision. *Harrington v. Town of Kennebunk,* 459 A.2d 557, 561 (Me.1983); *Driscoll,* 441 A.2d at 1026. That the record contains evidence inconsistent with the result or that inconsistent conclusions could be drawn from the evidence does not render the Board's findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the Board's conclusion. *In re Maine Clean Fuels, Inc.,* 310 A.2d 736, 741 (Me.1973). The burden of persuasion in the Rule 80B action rests on the Macks, as the parties seeking to overturn the Board's decision. *See Seven Islands Land Co. v. Maine Land Use Regulation Commission,* 450 A.2d 475, 479 (Me.1982).

Trundy Point is a bald peninsula of ledge protruding into the ocean and covered in part by soil and grass. The ledge rises jaggedly to a height of about 22 feet from the ocean. The proposed house would sit at the point of highest elevation. The entrance drive would pass over the neck of the peninsula, which is lower than the adjoining mainland and the house site. The plans call for landfill under the driveway, so that the completed driveway would be three to four feet higher than the present neck of the peninsula. The house is designed to be impervious to airborne spray but would not be able to withstand the direct force of breaking waves. Thus, the two crucial safety concerns are whether waves during storms would reach the level of the house and whether storm waves would damage the entrance drive, leaving the inhabitants isolated in a dangerous position.

Various expert witnesses testified on behalf of the Macks at the Board hearing. Barry Timson, a coastal geologist, predicted that even in an extreme, 200-year storm, the house would not be subjected to mass water pressure or running up of waves.

The Macks' architect and design engineer testified to the design strength of the roadway. They conceded that waves would wash over the roadway during severe storms but expressed confidence that the roadway would not be damaged. The architect conceded that in the long run the roadway might require maintenance from the effect of the waves.

The witnesses who testified that the project would be unsafe were local residents opposed to its construction. Two neighbors said that during the blizzard of 1978, a 100-year storm, they saw waves wash completely over the proposed house site. During the 1978 storm, one neighbor saw waves carry debris as large as a telephone pole against the shoreline in similarly exposed places. He said the debris "actually filled living rooms, went [through] picture windows, darn near killed people." A fourth resident, an architect with forty-five years' experience, doubted that the roadway could be designed to withstand the pounding of storms. In rebuttal, the Macks' geologist stated that waves could not have washed over the house site during the 1978 storm; if they had, the soil on the site would have been completely washed away.

■ The record contains sufficient evidence to support the Board's finding that wave action could make the house unsafe for its inhabitants and could damage the entrace drive, leaving the inhabitants isolated in a dangerous position. Although the Board could not have validly based its decision against the Macks solely upon its "visceral" reaction to the project, *V.S.H. Realty, Inc. v. Gendron,* 338 A.2d 143, 145 (Me. 1975), it was not compelled to accept the conclusions of the Macks' experts. *Cf. Kennebec Savings Bank v. Chandler,* 447 A.2d 824 (Me.1982) (judge as factfinder need not accept conclusions of independent appraiser of market value); *Qualey v. Fulton,* 422 A.2d 773 (Me.1980) (judge as factfinder may reject uncontradicted testimony based on

witness's lack of credibility).[1] On the first point, the safety of the house, the prediction of the Macks' geologist that waves could not reach the level of the house was pitted against neighbors' testimony of their direct observations to the contrary. The Board could have believed the neighbors instead of the geologist, although it was not compelled to do so. Expert predictions that a structure will prevail against the hostile forces of nature have not always proved infallible.[2] On the second point, the Board could have believed the architect neighbor that the roadway would not survive the pounding of waves.

Accordingly, the Superior Court erred in reversing the Board on the health-and-safety criterion for a setback exception. Because an applicant for a reduced setback must satisfy all nine criteria, we need not reach the issue of conservation of natural beauty.

## II. The Setback Definition

The Macks' cross-appeal presents the question whether the Board and the Superior Court erred in deciding that the proposed house would not meet the setback requirements of the zoning ordinance. The required setback is fifty feet for the residence and thirty feet for detached improvements, such as the proposed driveway. Cape Elizabeth, Me., Zoning Ordinance § 19–3–6(i)(2).

"Setback" is defined in subsection 19–3–6(i) of the zoning ordinance, in pertinent part, as "the shortest horizontal distance from the foundation, sills or other supports of a building or other structure, or from the edge of the improved area of any other improvement, to ... the top of the bank, beach, cliff or other 'normal high water mark' of any salt water body ...." "Nor-

mal high water mark of coastal waters" is defined in subsection 19–1–3(t) of the ordinance as "[t]hat line on the shore of tidal waters which is the apparent extreme limit of the effect of the tides, i.e., the top of the bank, cliff, or beach above high tide."

The parties disagree as to the proper interpretation of the term "normal high water mark" as applied to Trundy Point. The Board accepted the town building inspector's interpretation of the term as that line upon which the extreme limit of the effect of the tide is visually recognizable. The building inspector located the line on the southeasterly side of Trundy Point as "a line of vegetation, beyond which the topography is characterized by jagged ledge and small pools." For the sheltered, northwesterly side of Trundy Point, he noted that "the apparent extreme limit of the effect of the tide is less readily apparent due to the variable slopes and vegetation, but it is clearly located inland 5 to 15 feet from the mean high tide line." The line on the northwesterly side was about sixteen vertical feet lower than the line on the exposed southeasterly side. The Macks and their geologist, on the other hand, interpret the normal high-water mark as the exact still-water level of the extreme limit of the tide itself, not including the effect of waves and ocean spray. The record contains competent evidence that the building inspector properly determined the "normal high water mark," as interpreted by the Board, and that the resulting measurements yield insufficient setbacks for the Macks' project. Thus, the question is whether, as a matter of law, the Board interpreted the ordinance correctly.[3]

The definitions in the ordinance of "setback" and "normal high water mark of

1. The "substantial evidence" standard for reviewing administrative factfinding is the same as the "clear error" standard used by the Law Court to review factfinding by a trial judge. *Gulick,* 452 A.2d at 1207–8.

2. The "unsinkable" *Titanic* is one example. A second is the newly constructed bridge over Puget Sound which collapsed in 1940 from excessive oscillations caused by wind action. It

had been designed by the most eminent design engineer for suspension bridges in the world. J. Gies, *Bridges and Men* 241–53 (1963).

3. The meaning of terms or expressions in a zoning ordinance is a question of law for the court. *Singal v. City of Bangor,* 440 A.2d 1048, 1051 (Me.1982).

coastal waters" are somewhat confusing. The setback definition implies that the top of the bank, beach or cliff may be, depending on the particular site, the normal high-water mark; however, it plainly contemplates other normal high-water marks. The definition of "normal high water mark" begins with a general definition ("[t]hat line on the shore of tidal waters which is the apparent extreme limit of the effect of the tides") and ends with what are obviously intended to be three examples ("the top of the bank, cliff or beach above high tide").[4]

 Nevertheless, the Board properly interpreted the definition of normal high-water mark by taking into account the effect of the tides beyond the high-tide level of the water itself. The ordinance specifically refers to the extreme limit of the *effect* of the tides. The definition of "normal high water mark" also includes the top of the bank, cliff or beach *above* high tide. Thus, the ordinance contemplates some terrain above the high-tide level that is still within the effect of the tides. In short, we affirm the Board's and the Superior Court's decision that the proposed house would violate the setback requirements.

III. *Conclusion*

We reverse the Superior Court's decision that the project qualifies for an exception and affirm its ruling on the setback requirements. The Macks urge us to rule on the town's motion to dismiss the estoppel and taking counts. We decline to do so in the absence of consideration of those issues by the Superior Court and more thorough briefing and oral argument on the issues by the parties.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with this opinion.

All concurring.

---

4. The abbreviation "i.e." is used when in fact, to be consistent with the setback definition, the abbreviation "e.g." should have been used.