1997 ME 33

**OGUNQUIT SEWER DISTRICT et al.**

v.

**TOWN OF OGUNQUIT.**

Supreme Judicial Court of Maine.

Argued Oct. 7, 1996.
Decided Feb. 28, 1997.

Harry B. Center, II, (orally), Roger S. Elliott, Smith, Elliott, Smith & Garmey, Saco, for Ogunquit Sewer District.

Michael T. Healey (orally), Jacqueline W. Rider, Verrill & Dana, Portland, for Cliff House and Motels, Inc.

Penny Littell, (orally), Severin M. Beliveau, Preti, Flaherty, Beliveau & Pachios, L.L.C., Portland, for defendant.

Before: WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] The Ogunquit Sewer District and The Cliff House and Motels, Inc., appeal from the judgment entered in the Superior Court (York County, *Calkins, J.*) affirming the decision of the Town of Ogunquit Board of Selectmen not to issue a written assurance that a proposed sewer extension is consistent with the Town's municipal plans and ordinances. On appeal the District and the Cliff House argue that the Board's decision is not supported by substantial evidence and is arbitrary and capricious. The Cliff House also argues the Board exceeded its authority, or alternatively, the statute creating that authority is unconstitutional. We affirm the judgment.

[¶ 2] The Cliff House, a hotel located in the town of York, currently disposes of its sanitary sewage in accordance with a grandfathered overboard discharge license. The Ogunquit Sewer District, a quasi-municipal corporation organized pursuant to P. & S.L. 1963, ch. 87, is charged with the control of sanitary sewage collection, treatment, and disposal in the town of Ogunquit. The District agreed to provide sewer service to the Cliff House on the condition that the Cliff House, at its expense, construct the neces-

sary sewer extension line and associated facilities.

[¶ 3] In January 1995, pursuant to 38 M.R.S.A. § 1252(7)(A)(2), the District requested written assurance from the Town that the proposed sewer extension was consistent with the Town's municipal plans and ordinances regulating land use.[1] The Ogunquit Board of Selectmen held a public meeting to discuss the District's request. The chairman of the Ogunquit Planning Board and representatives of the District and the Cliff House appeared at that meeting.

[¶ 4] Information gathered at the meeting shows: The District operates a sewage treatment facility with a capacity of 1,280,000 gallons per day (gpd). The facility began operating in 1991. Its design capacity is based on population projections contained in the Town's comprehensive plan, plus 25%. In accordance with the plan, the facility is designed to serve both a resident and transient population that is projected to double between 1990 and 2010. Expressed in terms of sewage generation, the facility is designed to handle a 600,000 gpd increase in sewage between 1987 and 2020, or an annual increase of about 3%. The actual flow increase to the plant since 1987 has been less than ½% per year, and in 1993 the flow was 760,000 gpd. Because design projections show the plant was anticipated to receive 920,000 gpd in 1993, the plant had an excess capacity of 160,000 gpd in 1993.

[¶ 5] The planned sewer connection consists of a force main that would run northerly from the Cliff House in York along Shore Road to Ogunquit where it would tie into an existing manhole that is part of the District sewer system. The portion of the project in Ogunquit would consist of about 510 feet of sewer line, i.e., the length needed to span the distance between the town line and the existing sewer manhole. A pump station would be located at the Cliff House. The design

capacity of the project as a whole is 60,000 gpd, an amount equal to the current licensed discharge capacity of the Cliff House.

[¶ 6] The Board expressed several concerns at the meeting, including whether the force main along Shore Road would enable additional users in either York or Ogunquit to connect to the sewer system; whether additional users in York could connect to the pump station located at the Cliff House; and whether the expected use of the treatment facility's capacity would be detrimental generally to development in Ogunquit. At the end of the meeting the Board voted to deny written assurance based on its conclusion that the proposed sewer expansion was not consistent with the Town's comprehensive plan. The Board's written findings of fact include (1) the expected level of use by the Cliff House was a significant amount of the remaining capacity of the District's facility; (2) historically, the Town had a capacity problem with the District's facility; (3) when the comprehensive plan was revised in 1987, the Town recognized the inadequacy of the existing treatment facility and acknowledged that the proposed expansion of the facility would increase capacity for twenty years; (4) when the plan was revised in 1987 and 1991, it was not contemplated that the District would ever allow its system to be used by entities outside Ogunquit; and (5) the plan contemplates there are areas in Ogunquit where growth is dependent on the availability of public sewer service.

I.

*The Authority of the Board of Selectmen*

[¶ 7] The Cliff House argues that 38 M.R.S.A. § 1252(7)(A)(2) should not be interpreted to allow the Town to review all issues peripherally related to land use controls contained in the comprehensive plan, but rather should be limited to allow consideration of

---

1. Section 1252 provides:

> 7. **Sewer extensions.** A sewer district may not construct any sewer extension unless:
> A. The district acquires from any municipality through which the sewer extension will pass written assurance that:
> (1) Any development, lot or unit intended to be served by the sewer extension is in con-

formity with any adopted municipal plans and ordinances regulating land use; and
> (2) *The sewer extension is consistent with adopted municipal plans and ordinances regulating land use.*

38 M.R.S.A. § 1252(7) (Supp.1995), *amended by* P.L.1995, ch. 636, § 2 (effective July 4, 1996) (emphasis added) (footnote omitted).

issues immediately related to the laying of sewer extension pipes, i.e., issues typically addressed in zoning ordinances. These contentions are without merit. The plain meaning of the statute is clear. *See Fullerton v. Knox County Comm'rs,* 672 A.2d 592, 594 (Me.1996) (statute interpreted by first looking at the plain meaning of the statutory language seeking to give effect to the legislative intent). Section 1252(7)(A)(2) states that a municipality may determine whether a sewer extension is "consistent with adopted municipal plans and ordinances regulating land use." The comprehensive plan is an adopted municipal plan regulating land use, and its contents were properly considered by the Board.

■ [¶ 8] The Cliff House next argues that the Board exceeded its authority in denying written assurance based on concerns about the future capacity of the District's treatment plant. The Cliff House contends, first, that the Board's review exceeds the terms of the comprehensive plan referring to sewer projects; and, second, the decision interferes with the statutory authority of the District. The Town argues that provisions in both the plan and the statute enable the Board to consider the remaining capacity of the District's treatment facility. We agree.

[¶ 9] First, the terms of the comprehensive plan enable consideration of the future capacity of the District sewage treatment facility. A review of the plan shows it is intended to promote orderly and environmentally sound development. The plan is replete with policy statements designed to allow development, but to limit such development in ways that protect the Town's natural resources. For example, the plan states: "It is the policy of the Town ... to encourage growth only where appropriate and not in any one area of town," and that development in rural sections of Ogunquit, "areas ... where future growth may logically occur," is limited in part because public sewer

service is not available. The plan also states that the Town plans to protect its ground water resources by continuing to upgrade the sewer system. In light of these and other provisions, sewer service would be needed in certain areas of Ogunquit to ensure environmentally sound development. Such service depends directly on the available capacity of the District's treatment facility; thus, concerns regarding the future capacity of the facility are relevant in determining whether a project is consistent with the comprehensive plan.

■ [¶ 10] Second, the Board's decision does not interfere with the statutory authority of the District. Section 1252(7) provides that the District may not construct a sewer extension unless the Town issues written assurance. This limitation is incorporated into the District's charter, and any contrary provisions in the charter are repealed pursuant to section 1252.[2]

## II.

### *The Decision of the Board of Selectmen*

■ [¶ 11] The Cliff House and the District argue that the Board's decision is not supported by substantial evidence and is arbitrary and capricious. The Town contends that the Board's decision is supported by both express and implicit findings revealed by the record as a whole.

[¶ 12] The contentions raised by the Cliff House and the District are based on an erroneous perception regarding the concerns of the Board and its concomitant findings of fact. They argue that the project would use a maximum of about 10% of the remaining capacity of the treatment plant—an insignificant amount. While that statement may be true, the issue before the Board concerned what portion of the *excess* remaining capacity would be used, i.e., the difference between actual use and the design projection.[3] The

2. Section 1252 states that its "provisions are incorporated into the private and special laws governing all sewer districts. Any part of a sewer district charter not in conformity with this chapter is repealed." 38 M.R.S.A. § 1252 (Supp. 1996).

3. The confusion on this issue may be attributable to language in the Board's decision referring only to "the remaining capacity" of the treatment facility and the District's "Fact Sheet," which erroneously characterizes all of the remaining capacity of the treatment facility as excess capacity.

project would use about 38% of the unused excess capacity of the treatment facility.[4] It is that figure the Board characterized as significant.

[¶ 13] The Board's conclusions are consistent with policies enumerated in the comprehensive plan. *See F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856 (Me. 1992) (denial of zoning change request proper because in basic harmony with comprehensive plan); *LaBonta v. City of Waterville*, 528 A.2d 1262 (Me.1987) (grant of zoning change request proper because in basic harmony with comprehensive plan). The Board found that the proposed sewer extension would use a significant portion of the excess remaining capacity of the treatment facility and therefore the project threatened to deplete capacity needed to ensure environmentally sound development in Ogunquit. We conclude the Board's decision is supported by the record as a whole and is not without reason. *See Glasser v. Town of Northport*, 589 A.2d 1280, 1283 (Me.1991) (quoting *Mack v. Municipal Officers of Cape Elizabeth*, 463 A.2d 717, 720 (Me.1983)) ("That the record contains evidence inconsistent with the result or that inconsistent conclusions could be drawn from the evidence does not render [a municipal agency's] findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the [agency's] conclusion.").

### III.

*The Constitutionality of the Board of Selectmen's Action*

[¶ 14] The Cliff House argues that if section 1252 enables the Board to review whether the proposed sewer extension is consistent with the comprehensive plan, the statute is an unconstitutional delegation of legislative power to the Board in its administrative capacity. The Cliff House contends the comprehensive plan is impermissibly vague; therefore, any decision based on it is arbitrary, unequal, and a violation of due process and equal protection guarantees. The Town argues that the plan contains sufficient qualitative standards and that section 1252 permissibly allows review based on such standards. We agree.

[¶ 15] We presume a statute is constitutional and will invalidate it only when there is "a clear showing by 'strong and convincing reasons' that it conflicts with the Constitution." *State v. McGillicuddy*, 646 A.2d 354, 355 (Me.1994) (quoting *Opinion of the Justices*, 623 A.2d 1258, 1262 (Me.1993)). We find no such reasons in this case.

[¶ 16] The Legislature may delegate to municipal boards discretionary authority to approve or disapprove development projects as the board determines best serves the public interest, provided the Legislature establishes adequate standards to limit and guide the board's decision. *See, e.g., Chandler v. Town of Pittsfield*, 496 A.2d 1058, 1062 (Me.1985). In assessing the constitutionality of a legislative delegation of authority, we are obliged to review the entire relevant legislative scheme. *Lewis v. State Dept. of Human Servs.*, 433 A.2d 743, 746 (Me.1981). First, section 1252(7) provides specific guidelines by requiring municipalities to review whether a proposed sewer extension is consistent with adopted municipal plans and ordinances regulating land use. Second, because section 1252(7) allows review using a municipality's comprehensive plan, any such plan must in turn contain sufficient guidelines for the statutory scheme to pass constitutional muster. Contrary to the Cliff House's contention, the plan is not impermissibly vague. The plan provides numerous policy statements outlining standards for future development and it functions as an adequate guide for the purposes for which it is used here. *Cf. LaBonta*, 528 A.2d at 1265 (when faced with multiple goals of protecting residential neighborhoods and promoting economic opportunity and commercial development, a municipality must accommodate the multiple goals in a manner that advances the overall best interests of the municipality

---

4.

The calculation is as follows: ((project capacity)/(excess capacity)) × 100% = percent use

((60.000 gpd)/(160,000 gpd)) x 100% = 38%

as defined by the comprehensive plan read as a whole).

The entry is:

Judgment affirmed.

RUDMAN, Justice, dissenting:

[¶ 17] I respectfully dissent. Section 1252 of Title 38 of the Maine Revised Statutes places a limitation on a sewer district's ability to construct an extension. The statute required the Ogunquit Sewer District to obtain the written assurance of the Town of Ogunquit that the proposed extension "is consistent with adopted municipal plans and ordinances *regulating land use.*"[5] (Emphasis added). The Board of Selectmen based its decision on the Town's comprehensive plan. The Town's reliance on the Ogunquit Comprehensive Plan is misplaced because the comprehensive plan is not a plan or ordinance regulating land use. Had section 1252 of Title 38 of the Maine Revised Statutes provided, as it did from 1981 to 1993, reference to Ogunquit's comprehensive plan, and had the plan itself provided a basis for the municipal officers to withhold their approval of the proposed sewer extension, I would have no pause and would join the court. Neither of the prerequisites to my concurrence are present in this case.

[¶ 18] When our legislature has wanted to make reference to comprehensive plans it has done so. *See e.g.,* 30–A M.R.S.A. § 4314 (1996), 30–A M.R.S.A. § 4352(2) (1996), and 38 M.R.S.A. § 438–A(2) (Supp.1996). A comprehensive plan is statutorily defined. *See* 30–A M.R.S.A. § 4301(3) (1996). All municipalities that adopt local growth management programs and/or zoning ordinances are obligated to adopt comprehensive plans. 30–A M.R.S.A. §§ 4326, 4352(2) (1996).

[¶ 19] Subsection 7 of Section 1252, as originally enacted in 1981, required that a proposed sewer extension, *inter alia,* conform with the "comprehensive plans" of any affected municipality. The legislature in 1993 amended the statute by deleting the reference to comprehensive plans and providing that sewer extensions must be consistent with adopted municipal plans *regulating land use.* Clearly, by its action, the legislature intended that sewer extensions be reviewed for consistency with something other than the Town's comprehensive plan, i.e., adopted municipal plans and ordinances regulating land use.

[¶ 20] The 1987 Ogunquit Comprehensive Plan, as revised in 1981, provides that it

... [i]s not intended to be a blueprint for Ogunquit's future, but is rather to serve as a guide and a tool to assist in planning for that future. Specifically, the identification, implementation and strategies in the comprehensive plan does not confer final Town approval. Many of the actions suggested eventually will require approval of the Board of Selectmen, the legislative body, or both. Nor is the plan to be considered static. It will need to be reviewed and updated periodically. Certainly, in five years, if a new plan is not called for, major changes in this plan will have to be made.

Executive Summary to 1987 Ogunquit Comprehensive Plan as revised, p. iv.

[¶ 21] The Ogunquit Plan contains three sections: the first entitled *"A Natural Resources Profile of Ogunquit, Maine: An Analysis of the Natural Resources, Opportunities and Constraints of Future Development;"* the second entitled *"A Socio–Economic Profile of Ogunquit: Analysis of the Socio–Economic Opportunities and Constraints on Future Development;"* the third entitled *"A Community Infrastructure Profile of Ogunquit, Maine: An Analysis of Community Infrastructure Opportunities and Constraints on Future Development;"* and Appendices, (A) being the Growth Management Opinion Service, (B) the Trolley System Map, and (C) the 1991 Land Use Plan for the Town of Ogunquit. The Land Use Plan proposes a number of revisions to Ogunquit's Land Use regulations, including the establishing of three new zoning districts. The Ogunquit Plan is not, as the court suggests, *"An Adopted Municipal Plan Regulating Land Use."* The Plan appropriately describes the then existing facts and sug-

---

5. I note there is no comma between the words "plans" and "and." I thus conclude that the words "regulating land use" modify both "plans" and "ordinances."

gests the community's hopes and aspirations for the future. As to the sewer system, the comprehensive plan (a) describes the then existing situation regarding sewerage disposal; (b) states that the sewer district is proceeding with plans to expand its existing facility; and (c) provides a "recommendation" to proceed as scheduled. Ogunquit Comprehensive Plan § III (XIV) (1992) *as amended* Nov. 1993. Some comprehensive plans may regulate land use. The Ogunquit Comprehensive Plan simply does not.

[¶ 22] I would vacate the judgment of the Superior Court and remand to the Town to determine whether the proposed sewer extension is consistent with the Town's zoning ordinance which appears to be the only plan or ordinance adopted by the Town which regulates land use.