STATE OF MAINE
HANCOCK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-3

ANNE S. HANNUM,                          )
                                         )
              Petitioner                 )
                                         )
v.                                       )
                                         )
MAINE BOARD OF                           )     DECISION
ENVIRONMENTAL PROTECTION,                )
                                         )
              Respondent                 )
                                         )
 and                                     )
                                         )
MILLICENT GUPTIL HIGGINS, et al.,        )
              Intervenors

DONALD L. GARBRECHT
LAW LIBRARY

NOV 19 2002

Pending before the court is Anne S. Hannum's (the "Petitioner") petition for

review of the Maine Board of Environmental Protection's (the "Board") decision denying

her application for a permit under the Natural Resource Protection Act ("NRPA").

Edmond J. Bearor, Esq., and Luke M. Rossignol, Esq., for the Petitioner. Lucinda E.

White, Assistant Attorney General, and Margaret Bensinger McCloskey, Assistant

Attorney General, for the Maine Board of Environmental Protection. Douglas B.

Chapman, Esq., and Eileen McGlinchey, Esq., for the Intervenors, Millicent Guptil

Higgins and Ruth Higgins Horseman. James S. Nixon, Esq., for the Intervenor, Friends

of Acadia. For the following reasons the Maine Board of Environmental Protection's

decision is affirmed.

## Background

The Petitioner is the beneficiary, and one of the two named trustees, of the

Revocable Deed of Trust of Anne Stroud Hannum. The trust owns a sixty-two acre

1

parcel of land with 1200 feet of frontage on Long Cove. On November 1, 1999, the Petitioner filed a permit application with the Maine Department of Environmental Protection ("DEP") pursuant to the NRPA to construct a ninety-foot long and five-foot wide private recreational dock.

The Army Corps of Engineers, the United States Environmental Protection Agency, the United States Fish and Wildlife Service and the National Marine Fisheries Service reviewed the project and did not object. The Maine Department of Inland Fisheries and Wildlife also approved the project finding specifically that the project would not impact essential wildlife habitats occupied by bald eagles or roseate terns because of the distance between the proposed pier and their nests.

The DEP determined that there was "credible conflicting technical information" regarding the licensing criteria and recommended the Board hold a public hearing on the proposal. The DEP also recommended the Board assume jurisdiction over the application because it had generated more than local concern and was likely to be of significant public interest.

The Board granted Millicent Higgins, Ruth Higgins Horsman, Dr. Thomas Watt, and the Friends of Acadia intervenor status. On June 15, 2000, the Board conducted a site visit and held a public hearing. They reconvened the hearing on July 6, 2000. The DEP recommended approval but the Board ultimately denied the application. The Board determined the proposed activity would unreasonably interfere with existing scenic and aesthetic uses, finding the project would cause an unreasonably adverse impact to wildlife in the cove and unreasonably interfere with the public viewing of wildlife. Further, the proposed activity would unreasonably harm significant wildlife habitat

2

because the pier would increase boat traffic, disturbing existing seal and tern colonies, and finally the proposed activity did not meet the avoidance and minimal alteration standards because the Petitioner had reasonable and practicable alternatives to constructing a permanent pier.

## Arguments

The Petitioner contends the legislature engaged in an unconstitutional delegation of authority because they failed to provide adequate guidance to the DEP under the NRPA. Second, the Petitioner argues the standards contained in the NRPA and the Wetlands Protection Rules (the "Rules"), which the Board developed pursuant to the NRPA, are unconstitutionally vague because they cause reasonable people to guess at their meaning. Finally, the Petitioner argues the Board committed errors of law when they applied their regulations. The Board interpreted the NRPA to include certain factors the Legislature did not explicitly list and when applying the Rules the Board considered alternatives requiring the Petitioner to abandon the project.

The Board contends Legislature provided sufficient guidance in the NRPA. Further, the Board argues the NRPA standards and the Rules are not unconstitutionally vague. Lastly, the Board contends they correctly interpreted and applied the relevant statutes and rules.

## Discussion

**Delegation of Authority**

The Petitioner contends the Legislature engaged in an unconstitutional delegation of authority because they did not provide well-defined, specific and clear guidelines to the DEP. The Petitioner points out that vague regulations permit an agency to engage in

policy-making, lead to selective enforcement, and fail to adequately guide public conduct.

There is a strong presumption of Constitutionality and the Petitioners bear the burden of proving the legislation is unconstitutional. Town of Baldwin v. Carter, 2002 ME 52, ¶9, 794 A.2d 62. In assessing the constitutionality of a legislative delegation of authority to an administrative agency, the court reviews the entire relevant legislative scheme. Ogunquit Sewer Dist. v. Town of Ogunquit, 1997 ME 33, ¶16, 691 A.2d 654. The courts look to see if the legislation delegating authority contains sufficient standards to guide agency decision-making. Id. The Court in Lewis v. State Department of Human Services, 433 A.2d 743, 748 (Me. 1981) found the legislature accomplished this goal when they clearly revealed the purpose of the regulations, defined what the agency can regulate and suggested degrees of regulation. Northeast Occupational Exchange Inc. v. State, 540 A.2d 1115, 1116 (Me. 1988).

38 M.R.S.A. §341-A provides for a Department of Environmental Protection consisting of the Board of Environmental Protection, and a Commissioner of Environmental Protection. The department shall:

> prevent, abate and control the pollution of the air, water and land and preserve, improve and prevent diminution of the natural environment of the State. The Department shall protect and enhance the public's right to use and enjoy the State's natural resources and may educate the public on natural resource use. 38 M.R.S.A. §341-A(1-2).

The Legislature specifically charged the Board with the authority to engage in rulemaking, pursuant to the Maine Administrative Procedures Act, to interpret, implement and enforce any provision of law the Department administers. 38 M.R.S.A.

4

§341-D(1). The Legislature further charged the Board with ruling on applications for permits pursuant to 38 M.R.S.A. §341-D(2).

In the NRPA, the Legislature found the State's various environmental resources were a substantial asset and their destruction would cause damage to the state's economy and the health, safety and general welfare of the state's citizens. 38 M.R.S.A. 480-A. The Legislature further noted:

> "there is a need to facilitate research, develop management programs and establish sound environmental standards that will prevent the degradation of and encourage the enhancement of these resources. It is the intention of the Legislature that existing programs related to Maine's rivers and streams, great ponds, fragile mountain areas, freshwater wetlands, significant wildlife habitat, coastal wetlands and sand dunes systems continue and that the Department of Environmental Protection provide coordination and vigorous leadership to develop programs to achieve the purposes of the this article. The well-being of the citizens of this State requires the development and maintenance of an efficient system of administering this article to minimize delays and difficulties in evaluating alterations of these resource areas.
> The Legislature further finds and declares that the cumulative effect of frequent minor alterations and occasional major alterations of these resources poses a substantial threat to the environment and economy of the State and its quality of life." 38 M.R.S.A. §480-A.

For these reasons the Legislature prohibited various activities in, on or over any protected natural resource, including coastal wetlands, without a permit. 38 M.R.S.A. §480-C. Pursuant to this statute, an individual must apply for a permit in order to construct any permanent structure, such as a pier. Id. The legislature established various standards that any person seeking a permit must meet before the DEP approves the application. 38 M.R.S.A. 480-D. Acting pursuant to 38 M.R.S.A. §341-D, the Board established rules to assist them in implementing and interpreting the standards the legislature included in 38 M.R.S.A. 480-D. 06-096 CMR 310 §1.

The Legislature authorized the Board to engage in rule-making to carry out their duties under the statutes they implement. The Board established the Rules to assist them in implementing the NRPA, 38 M.R.S.A. §§480-A through 480-Z. The Legislature clearly defined the NRPA's purpose, limited what conduct and in what areas it would apply to, and established a variety of standards to guide the Board in the implementation of the NRPA. Further, the Board must promulgate regulations or rules subject to the Maine Administrative Procedures Act, 5 M.R.S.A. 375 (II-A) and its rule making procedures, which provide additional procedural safeguards.

The cases the Petitioner relies upon are distinguishable from the present matter. In Kosalka v. Town of Georgetown, 2000 ME 1o6, 752 A.2d 183, the court struck down an town zoning ordinance requiring campgrounds to "conserve natural beauty" in order to be allowed as a conditional use and the court in Wakelin v. Town of Yarmouth, 523 A.2d 575 (Me. 1987) struck down a zoning ordinance that gave the local ZBA discretion to deny certain applications if the use was not "compatible with the existing uses in the neighborhood". Those cases did not involve administrative agencies acting pursuant to a statute. The Court has recognized the substantial difference in delegations from municipalities to local boards permitting discretion and delegations from the Legislature to state agencies bound by statute. Lewis, 433 A.2d at 748. It is not always in the best interest of the legislature to create precise standards themselves, especially when dealing with a highly technical and scientific area such as the environment, and the additional procedural safeguards present in legislative delegations of authority can adequately make up for the lack of precise standards. Id. With the petitioner's burden and the

6

presumption of constitutionality in mind, the legislature did not engage in an unconstitutional delegation of authority.

**Void for Vagueness**

Petitioner also contends the standards themselves are unconstitutionally vague. The Board denied the Petitioner's permit based on three separate standards. First, the Board found the pier would "unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses" in violation of 38 M.R.S.A. 480-D(1). Second, due to increased boat traffic that would disturb the seal and tern colonies, the pier would unreasonably harm "significant aquatic habitat …or other aquatic life" in violation of 38 M.R.S.A. 480-D(3). The Board further found the Petitioner was not in compliance with section 310(5)(A) of the Rules, providing "No activity that would cause a loss in wetland area, functions and values shall be permitted if there is a practicable alternative to the project that would be less damaging to the environment. Each application must provide an analysis of alternatives (see Section 9(A)) in order to demonstrate that a practicable alternative does not exist."

Concepts of Due Process flowing from both the Fourteenth Amendment of the United States Constitution and Article I, 6-A of the Maine Constitution require laws provide notice of what conduct the state will sanction. Town of Baldwin, 2002 ME 52, ¶10. The Court construes statutes in order to preserve their constitutionality and the Petitioner bears the burden of proving there is no logical, constitutional construction. Id. at ¶9. Although the courts apply the "void for vagueness" doctrine most often in criminal cases, they have applied the doctrine to the civil regulation of conduct. Id. at ¶10. Courts apply the doctrine in two situations: first, when statutes purport to regulate a person's

conduct and provide a penalty for non-compliance and; second, when the statutory prohibitions are clear, but guidelines for enforcement are not sufficiently clear so as to prevent arbitrary enforcement. In re Bailey M., 2002 ME 12, ¶19, 788 A.2d 590, 598.

An ordinance, or in this case a regulation, is void when its language is so vague that people of common intelligence must guess at its meaning. Town of Baldwin, 2002 ME 52, ¶10. Petitioner relies on the court's decisions in Kosalka and Wakelin and suggests the regulation in the present matter is similar to the regulations the court struck down in those cases. In Wakelin the court struck down a zoning ordinance because it did not contain specific standards to guide the zoning board in applying the terms "intensity of use" and "density of development". The court found the lack of specific standards allowed the board to engage in policy-making instead of confining itself to applying permit requirements. Wakelin, 523 A.2d at 577. Similarly in Kosalka the court held a zoning ordinance void for vagueness because it did not provide the zoning board with any guidance on how to properly interpret a requirement calling for developers to "conserve natural beauty." The Court held the ordinance contained an unmeasurable quality "totally lacking in cognizable, quantitative standards." Kosalka 2000 ME 106, ¶17.

However, it is important to note, both of these cases primarily dealt with an unconstitutional delegation of legislative authority from a municipality to a town board. As discussed above, this is not the situation here. While the standards contained in the ordinances may sound similar, their context is what led the court to determine they were unconstitutionally vague. The court specifically found "neither developers nor the ZBA are given any guidance on how to interpret the 'conserve natural beauty' requirement." Id at ¶15. The lack of standards allowed the Board to "express a legislative-type opinion

about what is appropriate for the community." Wakelin 523 A.2d at 577. In the present case the Board is not free to engage in policy making, nor is there a lack of adequate standards to guide their application of the rules.

The Legislature determined what areas needed protection and what conduct required a permit when they drafted the NPRA. The Legislature directed the DEP, including the Board, to implement the Legislature's stated policy of protecting valuable environmental resources. They limited and confined the Board's discretion in a number of ways. First, the standards the legislature charged the Board with implementing contained quantifiers. The activity cannot *unreasonably* interfere with *existing* aesthetic, recreational or navigational uses and, the activity cannot *unreasonably* harm any *significant* wildlife habitat. 38 M.R.S.A. §480-D(1,3)(emphasis added). Second, the legislature limited the Board's authority in 38 M.R.S.A. §341-B when they clearly defined the agency's purpose. The legislature's purpose in creating the Board was to "provide informed, independent and timely decisions on the interpretation, administration and enforcement of the laws relating to environmental protection..." 38 M.R.S.A. §341-B. The legislature further confined the Board's discretion by limiting how the Board can act. The Board may only "fulfill its purpose through rulemaking, decisions on selected permit applications, review of the commissioner's licensing and enforcement actions and recommending changes in the law to the Legislature." Id. Finally, the Rules, created by the DEP via the rulemaking process, contain sufficient guidelines and quantifiers to limit the Board's discretion. The Board limited the Rule's purpose and application to 38 M.R.S.A. §480-B. 06-096 CMR §310(1-2). The standards in question in the present matter contains quantifiers, "No activity that would cause a loss in wetland area,

9

functions and values shall be permitted if there is a *practicable* alternative to the project..." 06-096 CMR §310(5)(A). This is a different situation than Kosalka and Wakelin presented.

"[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." Maine Real Estate Commission v. Kelby, 360 A.2d 528, 531 (Me. 1976). (finding standards such as "bad faith" and "dishonest" not unduly vague) (quoting in an analogous context United States Civil Service Commission v. National Association of Letter Carriers, 413 U.S. 548, 578-79 (1973), 93 S.Ct. at 2897.) Neither the United States Constitution nor the Maine Constitution requires objective quantification, mathematical certainty, and absolute precision in legislative language. Town of Baldwin Carter, 2002 ME 52, ¶ 9. The words, "unreasonably", "practicable", "significant" and "existing" help to clarify the regulations. Id at ¶14. When the court can determine the meaning of words in a statute via common law or judicial determinations an ordinance is not vague. Id at ¶13 (citing State v. Davenport, 326 A.2d 1, 5-6 (Me. 1974). People of common intelligence need not guess at how to comply with the regulations in question. With the Petitioner's burden and the presumption of Constitutionality in mind, the statues and regulations are not void for vagueness.

**Errors of Law**

The Petitioner contends the Board committed an error of law when they applied their regulations to her permit application. Petitioner claims the Board based its

10

conclusions regarding the existing scenic and aesthetic uses, harm to aquatic life, and alternatives on speculative factors and uses not connected to the dock and on "cumulative impacts" not specified in the 38 M.R.S.A. §480-D. Further the Board incorrectly applied the practicable alternative standard by considering alternatives that involved completely abandoning the project.

The Board contends that in applying their regulations they must engage in a balancing of the interests including the effects of the project itself. The Rules require the Board to consider "wetlands beyond the physical boundaries of the project" when determining the impacts under 38 M.R.S.A. §480-D. 06-096 CMR §310 (5)(D). Further, since the practicable alternative rule requires the Petitioner to "demonstrate need" the Board is within its authority to examine alternatives, such as the three point pulley system, that accomplish the purpose of the proposed project short of actual construction.

Courts review an agency's decision for abuse of discretion, errors of law, or findings not supported by the evidence. Connolly v. Board of Social Work Licensure, 2002 ME 37, ¶6, 791 A.2d 125. Petitioners have the burden to show the Board's decision was an error of law. Freyburg Health Care Center v. Department of Human Services, 1999 ME 122, ¶7, 734 A.2d 1141. The court will show great deference to an agency's interpretation of a statute or regulation it administers unless the statute compels a contrary result. Maritime Energy v. Fund Insurance Review Board, 2001 ME 45, ¶7, 767 A.2d 812. The Petitioner fails to demonstrate that the statute requires an interpretation contrary to the one the Board applied to the present matter.

THE DOCKET ENTRY IS:

The Maine Board of Environmental Protection's decision denying Anne S. Hannum's application for a permit under the Natural Resource Protection Act is affirmed.

The clerk is ordered to incorporate this decision into the docket by reference.

DATED: 11-6-02

Joseph Jabar
Justice, Superior Court

**FILED & ENTERED**

NOV 1 2 2002

**SUPERIOR COURT HANCOCK COUNTY**

12