STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss                                     CIVIL ACTION
                                                  DOCKET No. AP-03-018

FILED & ENTERED
SUPERIOR COURT
NOV 0 5 2004
PENOBSCOT COUNTY

TINA M. HALUSKA,                        )
                                        )
            Plaintiff                   )
                                        )
v.                                      )          DECISION AND
                                        )          ORDER
CITY OF OLD TOWN,                       )
                                        )
            Defendant                   )

This matter is before the Court on an 80B appeal from a decision of the Defendant, City

of Old Town (herein "**the City**"), to deny the Plaintiff's, Tina M. Haluska, appeal from a Code

Enforcement Officer's (herein "**CEO**") decision denying her a building permit. The Plaintiff has

also filed a Complaint requesting a declaratory judgment (count 2), declaratory judgment,

permanent injunction and costs (count 3).

## Background

Haluska is the owner of a property located at 1019 Stillwater Avenue in the city of Old

Town, Maine, Penobscot County. A five-bedroom dwelling has been constructed on the

property. Since before 1990, Haluska freely admits that she has consistently rented out the

property to "multiple college students." Since 1990 the Stillwater property has been zoned R-1

under the City's ordinance. Section 111.0(a) states: "The R-1 zone is established as a zone

primarily for *single-family dwellings*." (Emphasis added). Section 102 (the ordinance most at

issue here) defines a "family" as , "[o]ne or more persons occupying a dwelling unit or lodging

unit. Unless all members are related by blood, marriage, or legal adoption, no such family shall

contain over three (3) persons." On April 4, 2003, Haluska applied for a building permit in order

1

to "raise entire structure 16" enclosing existing deck, full foundation under rear of structure." Haluska included a hand drawn sketch that showed two bedrooms on the second floor and two additional proposed bedrooms to be located in the "finished basement." On May 20, 2003, Charles Heinonen, Code Enforcement Officer, denied the permit, because he determined that "the sketch and statements by others indicate that the intent is to add additional bedrooms to the structure which will result in occupancy by more than 3 persons which are unrelated." Haluska appealed the decisions to the City's Zoning Board of Appeals (herein "**ZBA**"). She argued that she had maintained a nonconforming use since before the 1990 adoptions to the Old Town Zoning Ordinance. On June 24, 2003, after a public hearing with witnesses and exhibits, the ZBA found that while the property may have been in non-conformance for some period after the zoning change, the property "was in conformance for one or more years." The ZBA found that Haluska had not met her burden of proving that the property had maintained a nonconforming use since the zoning change in 1990. On June 26, 2003, in a written decision, the ZBA upheld the CEO's determination and denied Haluska's appeal. Haluska has appealed the ZBA's decisions to this Court pursuant to M.R. Civ. P. 80B and has filed a complaint seeking declaratory judgments, a permanent injunction and costs.[1]

---

[1] Count 2 seeks a declaratory judgment that the City's classification of Haluska's property as R-1 is "illegal and contrary to law, for her costs, and for such other relief as may be just and proper in the premises." Count 3 seeks:
> (a) a declaratory judgment that the "Old Town Zoning Ordinance, and in particular its definition of family, infringes upon the privilege and immunities, and rights on no married [sic] persons to associate, and their privacy rights to live together; (b) for a declaratory judgment that, if the ordinance is valid, and Plaintiff rents to a person or persons who qualify as a 'family' as defined, the Plaintiff is not liable under the ordinance to be prosecuted if such tenant shall thereafter sublease or allow other non-related persons to live at the premises; (c) for a permanent injunction prohibiting the Defendant from prosecuting the Plaintiff for violations of the City ordinance based upon an illegally restrictive definition of family, or based upon the conduct of tenants; (d) for her costs, attorney's fees, and such other relief as may be just and proper in the premises.

## Discussion

### A. Standard of Review

M.R. Civ. P. 80B provides for review of governmental action. Review is limited to the record below unless a motion for trial of facts is granted. M.R. Civ. P. 80B(d)(f). "When a zoning board of appeals acts as the tribunal of original jurisdiction as both fact finder and decision maker, the Court reviews its decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." Brackett v. Town of Rangeley, 2003 ME 109, ¶ 15, 831 A.2d 422, 427. "Interpretation of a zoning ordinance is a question of law that the Court reviews de novo." Sahl v. Town of York, 2000 ME 180, ¶ 11, 760 A.2d, 266, 266. This Court may not substitute its judgment for that of the ZBA. Id. In a Rule 80B action, the burden of persuasion rests with the party seeking to overturn the local decision. Mack v. Municipal Officers of the Town of Cape Elizabeth, 463 A.2d 717, 720 (Me. 1983).

### B. Applicable Law

#### 1. Nonconforming use

Haluska argues that she has maintained a nonconforming use of the property and is, therefore, not bound by the single family zoning requirements. Haluska, as the moving party, bears the burden of proving non-conforming use. See Town of Levant v. Seymour, 2004 ME 115, ¶ 19, 855 A.2d 1159, 1165. See also Town of Orono v. LaPointe, 1997 ME 185, ¶ 14, 698 A.2d 1059, 1063, n.4. To qualify for "nonconforming" or "grandfathered" status, it must be shown that the use existed prior to the enactment of the zoning provisions prohibiting it and that the use was "actual and substantial." LaPointe, 1997 ME 185, ¶ 13, 698 A.2d at 1062. Nonconforming use is governed by Old Town Zoning ordinance § 104.1(a)(3)(4):

3

If a non-conforming use ceases or is abandoned for any reasons for a period of one year or more, any future subsequent use of such building shall be in accordance with the provision in this ordinance. . . . Whenever a nonconforming use is changed to a permitted use such use shall not thereafter revert to nonconforming status notwithstanding any other provisions of this ordinance."

Here, it was Haluska's burden to prove that 1) what restrictions were in place in 1990 when the current ordinance was adopted; 2) how many people lived on the property and their relationship to each other before the 1990 adoptions; 3) how many people lived on the property and their relationship to each other from the 1990 adoptions to when the CEO denied the application for a building permit.

Haluska presented insufficient evidence to prove the time and details of nonconforming use from 1990 until the time of the CEO's denial. To begin, she only presented evidence of "multiple college students" living on the premises from before 1990 until the CEO's decision. She did not present evidence of the identity of these "multiple college students," their relationship to one another or how many of them lived on the premises at any one time. She presented no evidence concerning the restrictions that were in place during these times. Without such evidence, the ZBA had no basis to find that Haluska had maintained a nonconforming use. The ZBA also focused on a woman by the name of Joyce Ashley, who occupied the premises in 2002 with a man, who was not her husband and one or more foster children. It was possible that, even if the property was maintained in a nonconforming manner until this time, Ashley's occupancy would have constituted an abandonment of the nonconforming use if she had lived on the premises for one year or more. However, even here, Haluska failed to show that Ashley

lived on the premises for less than a year and who lived with her during that time. In short, Haluska failed to meet her burden of proving continuous nonconforming use.

In addition, the ZBA was also presented with evidence by the CEO that the property had been used as a "single family" residence at various times after the 1990 adoptions. The CEO presented property tax assessment cards for the property from the past twenty years that classified the residence as a "single family dwelling." The ZBA heard testimony that the tax cards were based on observations of the tax assessor from the day that he/she visited and inspected the property. Haluska's failure to carry her burden of proof, especially when combined with the evidence of conforming use was more than substantial evidence for the ZBA to find that the property was subject to the R-1 "single family" zoning requirements and to decide to uphold the CEO's determination.

2.      *Constitutional Issues*

Haluska raises a number of constitutional challenges to section 102's definition of "family." She argues that this definition violates the First Amendment to the U.S. Constitution and the right of privacy, due process and equal protection clauses of the Maine Constitution. Me. Const. Art. I, §§ 5, 6A. However, the Law Court has stated that, in an 80B appeal, issues not properly raised and preserved before a municipal board may not be raised on appeal. Wells v. Portland Yacht Club, 2001 ME 20, ¶ 5, 771 A.2d 371, 374. See also Berry v. Bd. of Trustees, Me. State Ret. Sys., 663 A.2d 14, 18 (Me. 1995) ("Generally, a party in an administrative proceeding must raise any objections it has before the agency for the issue to be preserved for appeal."); Oliver v. City of Rockland, 1998 ME 88, ¶ 7, 710 A.2d 905, 907 (ruling that a party must raise any objection to the agency "to ensure that the agency, and not the court, has the first opportunity to pass upon the claims of the parties"); Farley v. Town of Washburn, 1997 ME 218,

5

¶ 5, 704 A.2d 347, 349 (holding that an issue is considered raised and preserved for appeal "if there is sufficient basis in the record to alert the court and any opposing party to the existence of that issue"). This rule applies to constitutional issues. New England Whitewater Center, Inc. v. Dept. of Inland Fisheries and Wildlife, 550 A.2d 56, 58 (Me. 1988) (citing Oronoka Restaurant, Inc. v. Maine State Liquor Comm., 532 A.2d 1043, 1045 n.2 (Me. 1987)).

An examination of the record reveals that Haluska did not make any arguments or present any evidence that would have brought the current constitutional issues to the attention of the ZBA. Thus, these issues have not been preserved for appeal and are beyond the review of this Court.

### 3.    Distinction Between Proposed Structure and Proposed Use

Haluska argues that the ZBA and CEO "improperly failed to distinguish between a permitted use and a permitted structure." She argues that the proposed structure was perfectly legal and that it was improper for the CEO to erroneously focus on his "subjective belief as to what the applicant was going to do once the structure was in place." Haluska seems to be arguing that it was improper for the CEO and ZBA to assume that the additional bedrooms would be illegally rented instead of being used by a "single family." The City argues that, "[u]nder any circumstances, the City needs to know up front whether the proposed use is an authorized use under the local zoning ordinance" and that Haluska's argument "runs counter to the permit application requirements . . . and defies practice as well as logic."[2]

Haluska cites Giguere v. Inhabitants of the City of Auburn, 390 A.2d 514 (Me. 1978), to support the proposition that a municipality must permit the building of a legal structure and may

---

[2] The permit application requirements the City refers to are located in section 106.2(e), which states that an application for a building permit shall include, "[a]ny other information needed by the building inspector, planning board or the board of appeals to determine whether the provisions of this ordinance are being observed." This section indicates that the City has an interest in knowing whether proposed structures are going to be used in a lawful manner.

6

only take action when the structure is actually used in an illegal manner. However, the Giguere Court did not make this point and was interpreting the usage of a pole barn in light of Auburn ordinances applying to farming and agricultural uses.

Haluska misinterprets the applicable zoning ordinance. Section 111.0(b)(1) limits use in R-1 zones to "single family *dwellings*." (Emphasis added). This indicates that certain dwellings, would not be "single family dwellings", such as schools, churches and multi-family dwellings. For example, while a church may be used in another manner, such as a residence or storage facility, the CEO would be entitled to deny a building permit to build a building with a proposed steeple if churches are not permitted in the proposed zone. It would illogical to force a city to allow the construction of what is clearly a church and then have to wait until Sunday services to enforce the applicable zoning ordinance. Here, the proposed dwelling would have a total of *seven* bedrooms and, by Haluska's own admission, has been frequently rented out to more than three unrelated persons.[3] Under these circumstances, the CEO was entitled to interpret the ordinance and find that Haluska was not planning on using the property in a legal manner as a "single family dwelling."[4] While it is possible that a seven bedroom home could be used by a "single family," such a use was never claimed by Haluska before the ZBA and the CEO was entitled to use common sense and logic when interpreting and enforcing its zoning ordinances.

---

[3] In fact, according to the testimony heard by the ZBA, "multiple college students" were using the property at the time of the hearing.

[4] Furthermore, Haluska never presented any evidence to the CEO or the ZBA that she intended to use the residence as anything other than a nonconforming use and even requests that this Court issue a declaratory judgment allowing her to do exactly that.

## Conclusion

Therefore the entry is:

The decision of the City of Old Town Zoning Board of Appeals is **AFFIRMED**. Plaintiff's Complaint is **DISMISSED**.

The Clerk may incorporate this Decision and Order into the docket by reference.

DATED:  November 5, 2004

_____
Justice, Maine Superior Court

8

Date Filed 7/24/03     PENOBSCOT     Docket No. AP-2003-18

                         County

Action   80B APPEAL

**ASSIGNED TO JUSTICE ANDREW M. MEAD**

TINA M. HALUSKA          vs.   CITY OF OLD TOWN

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| GILBERT & GRIEF, P.A.<br>82 COLUMBIA ST - P O BOX 2339<br>BANGOR, ME. 04402-2339<br>BY: CHARLES E. GILBERT, III, ESQ. | ROBERT MILLER, ESQ.<br>P O BOX 414<br>OLD TOWN ME 04468 |

| Date of Entry | |
|---|---|
| 7/24/03 | Complaint (Rule 80B With Additional Causes of Action) filed. (Exhibit A & B attached) |
| 7/25/03 | Notice and Briefing Schedule 80B Appeal of Governmental Actions filed. Copy forwarded to Plaintiff's attorney. |
| 7/25/03 | Plaintiff's Motion to Specify Future Course of Proceedings filed. (Proposed order attached) |
| 8/8/03 | Plaintiff's Motion for Enlargement of Time in Which to File Motion for Trial of the Facts Filed. |
| 8/12/03 | Order filed. On Defendant's Motion and for cause shown, it is ORDERED that the time in which Plaintiff may file a Motion for Trial of Facts is hereby enlarged to September 19, 2003. (Mead, J.) Copy forwarded to attorney for Plaintiff. |
| 8/25/03 | Affirmative Defenses and Answer to Plaintiff's Complaint filed by Defendant. |
| 8/27/03 | Copy of Notice and Briefing Schedule forwarded to Defendant's Attorney. |
| 8/29/03 | Order filed. On motion made pursuant to Rule 80B(i), it appearing that the Plaintiff has joined a Rule 80B Appeal with independent causes of action, it is ORDERED that the course of proceedings shall be as follows: (1) Parties shall have 6 months in which to conduct discovery on Counts II and III of the Complaint; (2) The requirements of Rule 16B are waived as to Counts II and III; (3) 210 days from the date of this Order, unless otherwise modified by subsequent Order, Plaintiff shall file the Administrative Record, any dispositive motions pertaining to Counts II and III, and a Memorandum of Law; (4) The matter shall then proceed in the ordinary course. If, hereafter, Plaintiff files a motion pursuant to 80B(d) for a trial of facts on Count I, and the Court orders a trial of the facts, the trial on Count I shall be consolidated with any hearing which is necessary on Counts II and III. (Mead, J.) (order dated 8/28/03) Copy forwarded to all attorneys of record. |