2000 ME 169

**TOWN OF OGUNQUIT et al.**

v.

**The CLIFF HOUSE & MOTELS, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 7, 2000.
Decided: Oct. 5, 2000.

732

Charles F. Dingman (orally), Preti, Flaherty, Beliveau, Pachios & Haley, Augusta, for the appellants.

Harry B. Center (orally), Smith, Elliott, Smith & Garmey, Saco, for appellant, Ogunquit Sewer District.

Michael Healy (orally), Christopher B. McLaughlin, Verrill & Dana, Portland, for appellee, the Cliff House.

Jeffrey Pidot, Asst. Atty. Gen., Office of Attorney General, Natural Resources Division, Augusta, for the appellees.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, and ALEXANDER, JJ.

ALEXANDER, J.

[¶ 1] The Town of Ogunquit and Ogunquit Sewer District appeal from a judgment entered in the Superior Court (York County, *Fritzsche, J.*) affirming a decision of the State Planning Office (SPO) to reverse the Town's denial of written assurance of consistency with local land use regulations for a proposed intermunicipal sewer extension. On appeal, the Town contends that the SPO was barred from reviewing the Town's denial of written assurance because a request for written assurance had previously been denied, and that denial had been affirmed by this Court.[1] The Sewer District argues that the SPO failed to give proper deference to the Sewer District's changed position regarding the proposed extension and the Town's interpretation of its comprehensive plan. Finding that the SPO properly considered the matter and that its decision is supported by the record, we affirm.

## I. CASE HISTORY

[¶ 2] The Cliff House is a hotel and restaurant located in the Town of York that seeks a sewer extension connecting it to the Ogunquit Sewer District. The Sewer District agreed to provide service, which included an extension of the sewer line and use of a portion of the Sewer District's sewer treatment plant's capacity.

In 1995, the Cliff House and the Sewer District requested written assurance from the Town of Ogunquit that the Sewer District's proposed sewer extension was consistent with the Town's municipal plans and ordinances regulating land use. Such written assurance was required by statute as a prerequisite for construction.[2]

[¶ 3] The Ogunquit Board of Selectmen voted to deny the request for written assurance for the proposed extension. The Sewer District and the Cliff House appealed to the Superior Court, contending that the proposed extension was not inconsistent with the Town's plan. The Superior Court affirmed the Town's decision. The Sewer District and the Cliff House then appealed to us arguing that: (1) the Town's decision was not supported by substantial evidence; (2) the Town's decision was arbitrary and capricious; and (3) the Town exceeded its authority, or alternatively, that the statute creating the Town's authority was unconstitutionally vague. *See Ogunquit Sewer Dist. v. Town of Ogunquit,* 1997 ME 33, ¶ 1, 691 A.2d 654, 655. We affirmed, holding that the Town's decision was supported by the record, and thus was neither arbitrary nor capricious, and that the challenged statute was constitutional. *See id.* at ¶¶ 13 & 16, 691 A.2d at 658.

[¶ 4] Following the Town's initial decision to deny written assurance, the Legislature amended section 1252 to enable a party who was denied written assurance to seek review of the denial before the SPO.[3]

1. *See Ogunquit Sewer Dist. v. Town of Ogunquit,* 1997 ME 33, ¶ 13, 691 A.2d 654, 658.

2. The relevant statute provided, in pertinent part:

A. A sewer district may not construct any sewer extension unless it acquires from the municipal officers or the designee of the municipal officers of any municipality through which the sewer extension will pass written assurance that:

. . . .

(2) The sewer extension is consistent with adopted municipal plans and ordinances regulating land use.

3. The amended statute provides, in relevant part:

B. For an intermunicipal sewer extension, when written assurance is denied by municipal officers pursuant to paragraph A. an aggrieved party may appeal, within 15 days of the decision, to the State Planning Office . . . for a review of the municipal officers' deci-

38 M.R.S.A. § 1252(7)(A)(2) (Supp.1999). While the underlying litigation was pending, section 1252 was amended. P.L.1995, ch. 636, § 2. The amended statute, 38 M.R.S.A. § 1252(7)(B) (1996), will be discussed further *infra.*

[¶ 5] In June 1997, the Cliff House and the Sewer District filed a joint application with the Town, again seeking written assurance for the proposed extension. The 1997 proposal differed from the 1995 proposal in reducing, by 5,000 gallons per day, the amount of wastewater that would be accepted into the system. The Town again refused to provide written assurance. The Sewer District and the Cliff House then filed a joint appeal with the SPO.

[¶ 6] The SPO reviewed the administrative record of the Town's decision and the parties' written statements in support of their positions, conducted an informal hearing, and allowed all parties to submit additional evidence and arguments. In January 1998, the SPO rendered a decision in favor of the Cliff House and the Sewer District and issued written assurance that the proposed extension was not inconsistent with the Town's comprehensive plan. The Town appealed the SPO decision to the Superior Court pursuant to M.R. Civ. P. 80C.

[¶ 7] In April 1998, the Sewer District's Charter was amended to authorize, and upon sufficient petition require, special meetings at which the voters in the district could vote on matters specified in the notice of the meeting. *See* P. & S.L.1998, ch. 78, § 14–A. Pursuant to the new enactment, the Sewer District's qualified voters

met on June 29, 1998, and voted overwhelmingly in opposition to the proposed sewer extension. Upon receipt of the voting results, the Sewer District changed its position and aligned itself with the Town in opposing the extension. The Sewer District also filed a notice of withdrawal from the Superior Court action because it no longer sought affirmance of the SPO decision.

[¶ 8] After the Sewer District filed the notice of withdrawal, the Cliff House filed a motion to compel arbitration, and the Town filed a motion to remand the case to the SPO. The Superior Court agreed to stay the appeal pending arbitration, and once arbitration was completed, to remand the case to the SPO. In April 1999, an arbitrator issued a decision directing the Sewer District to comply with its contract with the Cliff House which obligated it to support the proposed sewer extension in all administrative and other proceedings necessary to obtain the required approval.

[¶ 9] The Superior Court issued an order confirming the arbitration decision on November 1, 1999, and the SPO then revisited the dispute on remand.[4] In January 2000, the SPO issued a supplemental decision affirming its earlier conclusion that the proposed sewer extension was not inconsistent with the Town's comprehensive plan. The case then returned to the Supe-

sion. [T]he following procedures apply to the review by the office.

(1) The office may request any additional information from the sewer district, the municipality or the department. All information requested by the office must be submitted within 30 days of the request, unless an extension is granted by the office.

(2) Within a reasonable time, the office shall hold a hearing. The office shall give at least 7 days' written notice of the hearing to the sewer district, the municipality and the party that requested the hearing. The hearing is informal and the office may receive any information it considers necessary.

(3) Within 15 days of the hearing and within 60 days of the request for review, the office shall make a decision that must include findings of fact on whether the sewer extension proposal is inconsistent with

adopted municipal plans and ordinances regulating land use. The decision of the office constitutes final agency action.

(4) Notwithstanding paragraph A, if the office determines that the sewer extension proposal is not inconsistent with adopted municipal plans and ordinances regulating land use, the office shall issue written assurance that the proposal is consistent with adopted municipal plans and ordinances regulating land use, and the sewer district may construct the sewer extension.

38 M.R.S.A. § 1252(7)(B) (Supp.1999), as enacted by P.L.1995, ch. 636, § 2.

4. The parties' briefs address some issues regarding the arbitration, but those issues do not relate to the central issues on this appeal and are not addressed in this opinion.

rior Court for final resolution of the Town's Rule 80C appeal. The Superior Court entered a judgment affirming the SPO's decision to reverse the Town's denial of written assurance. Both the Town and the Sewer District filed timely notices of appeal to this Court.

## II. RES JUDICATA

[¶ 10] Res judicata is a common law doctrine aimed at preventing the relitigation of claims that were tried or could have been tried "between the same parties or their privies ... in an earlier suit on the same cause of action." *See Blance v. Alley,* 1997 ME 125, ¶ 4, 697 A.2d 828, 829 (internal quotation and citation omitted). Res judicata applies when: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; (3) the matters presented for decision in the second action were, or might have been, litigated in the first action ...; and (4) both cases involve the same cause of action." *See Goumas v. State Tax Assessor,* 2000 ME 79, ¶ 5, 750 A.2d 563, 565. The doctrine may apply to bar a second cause of action even where the legal theories, relief sought, and evidence submitted may differ from those which were asserted, sought, and submitted in the first cause. *See Blance,* 1997 ME 125, ¶ 4, 697 A.2d at 829.

[¶ 11] The doctrine of res judicata applies to prior administrative proceedings, provided that such proceedings contain the "essential elements of adjudication." *See Town of Freeport v. Greenlaw,* 602 A.2d 1156, 1160 (Me.1992). The "essential elements of adjudication" include:

1) adequate notice; 2) the right to present evidence and legal argument and to rebut opposing evidence and argument; 3) a formulation of issues of law and fact to apply rules to specified parties concerning a specified transaction; 4) the rendition of a final decision; and 5) any "other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question."

*Town of North Berwick v. Jones,* 534 A.2d 667, 670 (Me.1987) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 83(2) (1982)).

[¶ 12] To determine whether the SPO should have declined to entertain the joint appeal, we must compare the circumstances surrounding the dispute before the Town in 1995 (and subsequently the Superior Court and this Court) with the circumstances confronted by the SPO in 1997. For this determination, we have adopted a transactional test. *See Draus v. Town of Houlton,* 1999 ME 51, ¶ 8, 726 A.2d 1257, 1260. Pursuant to the transactional test, causes of action are deemed to be the same if they were "founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." *Goumas,* 2000 ME 79, ¶ 7, 750 A.2d at 565 (quoting *Brown v. Osier,* 628 A.2d 125, 127 (Me.1993)). The transactional test is a "pragmatic" test, "requiring that the court analyze the factual groupings that can be aggregated for trial." *Id.* (quoting *Beegan v. Schmidt,* 451 A.2d 642, 644 (Me.1982)).

[¶ 13] The 1995 and 1997 actions cannot be viewed as arising out of the same nucleus of operative facts. The 1997 proposal modified the daily amount of sewage, it provided new factual data regarding the surplus capacity of the treatment facility and projected growth rates of the Town, and it followed a change in the law specifically designed to create a new forum to grant or deny written assurance regardless of a municipality's decision on the same request.[5] Therefore, although both

---

5. It must be recognized that the Legislature amended section 1252 with the current dispute specifically in mind. Indeed, the Legislature's Committee on Utilities and Energy carried over voting on the amendment from its 1995 session with the hope that the dispute could be resolved amicably. In addition, the Committee warned that failure to resolve the

actions involve the Town's denial of written assurance, the "nucleus of operative facts" giving rise to the two actions are significantly different. Accordingly, res judicata did not bar the SPO's consideration of the appeal.

## III. ADEQUACY OF SPO REVIEW

[¶ 14] The Sewer District contends that the 1996 amendment to section 1252 is merely procedural, and that the new enactment only authorized the SPO to review an appeal of the Town's decision, deferring to the Town's findings, in order to supplement the original record of the dispute.

[¶ 15] Section 1252 provides that the SPO: (1) may seek additional information from any of the parties; (2) shall conduct an informal hearing based upon any information the SPO considers necessary; (3) must make a decision that includes findings of fact regarding whether the sewer extension proposal is inconsistent with adopted municipal plans and ordinances regulating land use; and (4) shall issue written assurance if the proposed extension is not inconsistent with the municipal plan, regardless of whether the municipality denied the request. *See* 38 M.R.S.A. § 1252(7)(B) (Supp.1999). Accordingly, the SPO is authorized to conduct a *de novo* hearing on municipal denials of written assurance.

[¶ 16] Where the SPO acted as a factfinder and decision-maker, we review the SPO decision directly. *See Stewart v. Town of Sedgwick,* 2000 ME 157, ¶ 4, 757 A.2d 773. *See also Downeast Energy Corp. v. Fund Ins. Review Bd.,* 2000 ME 151, ¶ 13, 756 A.2d 948 (stating that "[w]hen the Superior Court has performed an appellate review of an administrative dispute could lead the Legislature to "revisit [section 1252(7)(A)] and explicitly to limit its application." Thus, it is evident that the Legislature amended section 1252 to address this case by providing a new reviewing forum, and the intent of the Legislature will not be real-

decision, 'we directly review an agency's decision for an abuse of discretion, error of law, or findings not supported by the evidence." ' (quoting *Fryeburg Health Care Ctr. v. Department of Human Servs.,* 1999 ME 122, ¶ 7, 734 A.2d 1141, 1143)).

[¶ 17] Section 1252 states that the SPO "may request any additional information," and "may receive any information *it considers necessary.*" 38 M.R.S.A. § 1252(7)(B)(1–2) (Supp.1999) (emphasis added). The SPO was fully aware of the Sewer District's opposition to the extension, and noted such opposition in its supplemental decision. The SPO, guided by its own statutory procedures, considered that factor, along with all of the other evidence submitted, and determined that the proposed extension was not inconsistent with the Town's comprehensive plan.

[¶ 18] As discussed above, section 1252(7)(B) contemplates a non-deferential *de novo* review by the SPO. Here, the record demonstrates that the SPO considered the Town's views. Specifically, the SPO recognized the comprehensive plan's: (1) policy of "support[ing] the Ogunquit Sewer District in operation of its sewage disposal systems;" (2) statement that the sewer plant "will be capable of handling the waste water flow [of the Town] for approximately 20 years;" (3) desire to protect groundwater and to provide sewer service to future developed areas; and (4) statement of the Town's intention to limit the future growth of transient housing. In addition, the SPO considered the plan's growth projections in estimating the Town's future sewer capacity needs, and discussed the Town's articulated reasons for denying the Sewer District's initial request for written assurance. These factors indicate that the SPO understood the

ized by barring the present claim on technical grounds. *See Strout v. Burgess,* 144 Me. 263, 275, 68 A.2d 241, 250 (1949) (noting that "[s]tatutes are to be interpreted in the light of reason, with a view to accomplishing the intended result").

Town's interpretation of its comprehensive plan, and thus the SPO did not abuse its discretion in determining the importance of that interpretation in the process of making its independent evaluation. *See Downeast Energy Corp.*, 2000 ME 151, ¶ 13, 756 A.2d 948.

The entry is:

Judgment affirmed.