STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-72
JMJ - KEN - 1/11/2008

CONSTRUCTION GOSCOBEC, INC.

Petitioner

v.

DECISION AND ORDER

LLOYD P. LAFOUNTAIN, III
Acting commissioner, Department of
Professional and Financial Regulation;

ROGER TIMMONS,
Chairperson, Maine
Manufactured Housing Board;

Respondents

and

G. STEVEN ROWE,
Attorney General for the
State of Maine

Party-In-Inerest

DONALD L. GARBRECHT
LAW LIBRARY

FEB 1 5 2008

This case comes to the court on motions by the respondents in a M.R. Civ. P. 80C

petition for judicial review. Petitioner has joined pursuant to its M.R. Civ. P. 80C

petition for review of the final agency action of the Maine Manufactured Housing Board

(MMHB), an independent count for enforcement of a consent decree pursuant to 10

M.R.S.A. § 8003(5)(B) Respondents move to: 1) dismiss LaFountain and Rowe as parties

to the action; 2) dismiss Count II of petitioner's complaint; and 3) strike petitioner's

motion to specify future course of proceedings.

In September 2003, petitioner, a Canadian corporation, sold a modular home to a licensed dealer in Maine. The licensed dealer in turn sold the home to Joan McCullough (McCullough) for installation on a lot in Searsport. Petitioner delivered and installed the home, while the licensed dealer was responsible for "buttoning-up" the home (e.g. shingling, siding, connecting ducts to the air exchange system, etc.). McCullough was dissatisfied with the work done by the licensed dealer and ultimately fired him and hired others in February 2004 to complete and repair work done by the licensed dealer.

In June 2004, McCullough filed a complaint with the MHHB. The complaint catalogued the many problems McCullough found in the "buttoning-up" of her modular home. Amongst those problems, McCullough noted,

> The big part, though, was the roof. He closed it up and shingled it. During the winter, we had shingles blowing all over the place, the roof had bare patches. Water was running from the roof, down through the chase areas of the house, into the basement. It was a mess.

(R. 2 State's Ex. 14, p. 61.)

McCullough's complaint was resolved in December 2004 by a Consent Agreement entered into by petitioner, MMHB and the Attorney General's Office. The Consent Agreement found that the licensed dealer was responsible for "buttoning-up" the home, including shingling it, and had done a poor job. The Consent Agreement also found that according to a July 21, 2004 inspection by Board Inspector Patrick Ouillette (Ouillette), four warranty violations had occurred. According to the Consent Agreement, Ouillette during a subsequent inspection on September 28, 2004 found that two of these violations had been corrected, but that the others had not been corrected because "McCullough did not want to have her home further disrupted by construction." (R. 2 State's Ex. 20 p. 75.) The Consent Agreement provided for fines to be paid by respondent and

The Board agrees to take no further disciplinary action against the Respondent based on its conduct as described herein, but the Board reserves the right to take action, including disciplinary action, which it deems appropriate and which is allowed by law, if the respondent fails to fully comply with the terms of this Consent Agreement. In taking any action action, including disciplinary action, based on the Respondent's failure to fully comply with this Consent Agreement, the Board may consider the circumstances described in the Statement of facts above, and any acknowledgements that Respondent has made to this agreement.

(R. 2 State's Ex. 20 p. 76.)

In November of 2006, McCullough again complained to the Board about the shingles on her manufactured home.[1] Pursuant to that complaint[2] Board Inspector, Lowell Smith, inspected McCullough's home on or about November 29, 2006. Smith determined that the shingles were manufactured to withstand 60 MPH winds, however the home was located on a bluff 25-feet above the ocean in Searsport and subject to winds in excess of those limits. According to Smith's investigation, two reputable building code standards listed the area in a 80-100 MPH wind range. Accordingly Smith sent petitioner an "Order of Correction and Inspection Report." Petitioner responded asserting that the Consent Agreement had settled the issue of roof repairs. MMHB found that petitioner had violated warranties in 10 M.R.S.A. §§ 1404 and 1404-A ordering fines and damages to be paid to the Treasurer of the State of Maine, MMHB and McCullough. Petitioner petitioned for this court's review.

---

[1] No written complaint in November of 2006 is in the record, according to the parties it is quite likely that the complaint was made orally. This court does not deal with the question here as it is yet to be raised by the parties, it does however note that 10 M.R.S.A. § 9051(2) provides that "[c]omplaints are to be made on a form prescribed by the board providing whatever information the board deems necessary."

[2] Again this issues is not raised by the parties and therefore is not dealt with here, but the board "shall cause to be investigated any complaint" made "[w]ithin one year and 10 days after installation[.]" 10 M.R.S.A. § 9051.

## I. Motion to Dismiss LaFountain and Rowe

"The proper parties on appeal are the same parties who participated in the hearing..." *McElroy v. State Employees Appeals Board*, 427 A.2d 958, 959 (Me. 1981). It is clear from the Board's decision that the State, through its representation by AAG Mills, participated in the hearing.[3] Additionally, the Attorney General was a party to the Consent Agreement, which comprises the basis of the independent count as well as the basis for petitioner's petition for judicial review. The Attorney General is a proper party to the proceeding. The parties agree that Acting Commissioner of the Department of Professional and Financial Regulation is not necessary to resolution of this matter and he is accordingly dismissed.

## II. Motion to Dismiss Count II

Respondents argue that the petitioner's independent claim for enforcement of the Consent Agreement is duplicative of its M.R. Civ. P. 80C petition. Respondent reasons that as part of this court's 80C review as to whether the Consent Agreement precluded the initiation of this action by the board, the court will necessarily review the Consent Agreement. In essence, respondent argues that vacating the decision of the Board per 80C would achieve the same result as enforcement of the Consent Agreement per 10 M.R.S.A. § 8003(5)(B). Respondent relies on *Adelman v. Town of Baldwin*, 2000 ME 91, 750 A.2d 577. In *Adelman*, the Law Court held that Superior Court had correctly struck an independent claim for bias and addressed it in the context of an 80B action. As noted by the petitioner here, 5 M.R.S.A. § 11007(4)(C)(4) provides that the court explicitly has

---

[3] The State, itself is not a proper party due to the doctrine of sovereign immunity. *See Anderson v. Commissioner of the Department of Human Services*, 489 A.2d 1094, 1095, n. 1 (citing *Thiboutot v. State*, 405 A.2d 230, 232-33 (Me. 1979).

jurisdiction provided by statute in the context of 80B and C to "reverse or modify he decision if the administrative findings, inferences, conclusions are...affected by bias..." Such explicit statutory jurisdiction to enforce the consent agreement does not exist in its judicial review jurisdiction under 80C.

Thus, petitioner claims that it has a right to relief independent of 80C through 10 M.R.S.A. § 8003(5)(B) that provides that "[a] consent agreement is not subject to review or appeal, and may be modified only by a writing executed by all parties to the original consent agreement. A consent agreement is enforceable by action in Superior Court." Petitioner argues that this independent enforcement action is a different and simpler question than that required by an 80C question. The 80C action asks whether the Board's administrative action occurred within the proper parameters, while the independent enforcement count asks whether the entire enforcement was barred by *res judicata* or the December 2003 Consent Agreement. Additionally, the petitioner adds that the standard of review is different with respect to the separate counts, highly deferential to the findings of the agency in the context of 80C and de novo in the context of the enforcement action.

The operative facts essential to the resolution of these independent issues are quite similar. McCullough filed a complaint in 2004. In that complaint she complained of problems, amongst others, with "shingles blowing all over the place." The complaint was investigated by a Board Investigator. The complaint was ultimately resolved by a Consent Agreement. That Consent Agreement found that the buttoning-up of McCullough's home (including shingling) had been done poorly. The investigation found four warranty violations, the Consent Agreement noted that two had been resolved and that because McCullough did not want her home further disrupted the other two had not been resolved. The Consent Agreement assessed fines and placed no

further repair obligations on the petitioner. Through the Consent Agreement the board agreed to take no further disciplinary action based on behavior described within the Consent Agreement. Respondent's separate claims argue that the Board's subsequent decision was legally flawed because the Consent Agreement, which is "accorded the same finality and res judicata effect as any other decree or award," precluded the assessment of fines; and the terms of the Consent Agreement themselves preclude the actions of the Board. *Jasch v. The Anchorage Inn*, 2002 ME 106, ¶ 12, 799 A.2d 1216, 1219.

Whether the question is based on preclusion of the claim because it should have been raised in the first action or whether it is simply based on the Consent Agreement resolving issues dealing with the roof, interpretation of the Consent Agreement will be necessary. However, given the differences in standards of review and differences that may arise between the two forms of action, it is proper to allow the petitioner both routes at this time. They are not unduly duplicative.

### III. Motion to Strike Petitioner's Motion to Specify the Future Course of Proceedings

Because this court does not dismiss Count II it must deal with respondents' motion to strike the petitioner's motion to specify future course of proceedings. Petitioner filed his 80C petition with the independent count on November 2, 2007. M.R. Civ. P. 80C(i) requires that in the event there is an independent claim joined with an 80C petition, the petitioner shall file no later than 10 days a motion for specification of the future course of proceedings. Petitioner clearly violated this rule by not filing its motion to specify until November 26, 2007.

> Unlike Rule 16, Rule 80B [and 80C] does not expressly provide for dismissal with prejudice as a sanction for failure to comply with any of its provisions...Nonetheless, the court has the inherent authority to sanction a party's failure to comply with any of the rules. In exercising its discretion to determine what, if any, sanction should be imposed for violation of the rules of

procedure, the court must, in effect, fit the punishment to the crime. "Although the trial court's discretion to choose an appropriate sanction is broad, when a court imposes a 'drastic sanction' such as dismissal or default we will closely scrutinize the court's decision."

*Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 16, 743 A.2d 237, 242-43 (citing *Saucier v. State Tax Assessor*, 1998 ME 61, ¶ 6, 708 A.2d 281, 283) (internal citations and footnotes omitted).

When determining the proper sanction in these circumstances "the court should take into account the purpose of the specific rule at issue, the party's conduct throughout the proceedings, the party's *bona fides* in its failure to comply, prejudice to other parties, and the need for the orderly administration of justice." *Id.* at ¶ 17, 743 A.2d at 243. No prejudice seems here to have occurred especially since a preliminary issue as to proceeding on the separate claim is determining whether it should or should not be dismissed. Petitioner offers as an excuse, his primary secretary ended her employment on October 31, 2007, counsel was training his new secretary during the first two weeks of November, during the transition the deadline for the motion to specify future course was inadvertently not placed on the calendar. Counsel left the country on November 16ᵗʰ returned November 22, and filed upon his discovery of the oversight. The motion to strike is denied.

It is hereby ordered that the parties schedule a phone conference with the court in order to establish the future course of these proceedings.

The entry is

    (1) Respondent's motion to dismiss Lloyd LaFountain is GRANTED;
    (2) Respondent's motion to dismiss G. Steven Rowe is DENIED;
    (3) Respondent's motion to dismiss Count II of petitioner's complaint is DENIED;
    (4) Respondent's motion to strike petitioner's motion to specify future course of proceedings is DENIED.

Dated:  January 11, 2008

Joseph Jabar
Justice, Superior Court

Date Filed  11/02/2007          Kennebec              Docket No.  AP-07-72
                                County

Action ____Appeal 80C____

Construction Goscobec Inc          Llyod P. LaFountain III, Acting Commissioner
103 Lebrun Street                     Dept Professional & Financial Regulartions
PO Box 907                         Roger Timmons, Charlperson
Riviere-du-Loop Quebec                Maine Manufactured Housing: Board
         G5R3Z5                    G Steven Rowe
                                      Attorney General for the State of Maine
                 ~~State of Maine~~                    vs.

| Offense | Attorney |
|---|---|
| Christopher K MacLean Esq<br>20 Mechanic Street<br>Camden ME  04843 | Christopher L. Mann, AAG<br>6 State House Station<br>Augusta Maine   04333-0006 |

| Date of Entry | |
|---|---|
| 11/06/07 | Filed 11/02/2007:   Petition for Review filed by Attorney MacLean. |
| 11/19/07 | Respondents and Party-in-Interest's Motion to Dismiss Independent Count and Memorandum of Law, filed. s/Christopher Mann, AAG<br>Proposed Order, filed.<br><br>Respondents and Party-in-Interest's Motion in Opposition to Motion for Stay Memorandum of Law, filed. s/Mann, AAG<br>Proposed Order, filed. |
| 11/26/07 | Motion to Specify Future Course of Proceedings, filed. s/MacLean, Esq.<br>Certificate of Service, filed. s/MacLean, Esq.<br>Proposed Order, filed.<br>Requesting hearing on Motion to Stay, filed. |
| 11/29/07 | ORDER ON MOTION FOR IMMEDIATE STAY, Mills, J.<br>Petitioner's Motion For Immediate Stay is denied.<br>Copy to attorneys. |
| 12/5/07 | Maine Manufactured Housing Board's Certified Record, filed 12/4/07. (in vault) |
| 12/7/07 | Petitioner's Memorandum in Opposition to Responents' and Party-in-Interest's Motion to Dismiss independent Count, filed. s/MacLean, Esq.<br>Certificate of Service, filed. s/MacLean, Esq.<br><br>Respondents and Party-in-Interest's Motion to Strike Petioner's Motion to Specify Future Course of Proceedings, filed. s/Mann, AAG |
| 12/18/07 | ORDER SPECIFYING FUTURE COURSE OF, Marden, J.   (12/11/07)<br>Petitioner's Motion to Specify Future Course of Proceedings is hereby granted. The time linits set forth in M.R.Civ.P. 80C shall cease to run pending the issuance of a further scheduling order by this court. A telephone hearing to determine an appropriate future course of proceedings shall be scheduled for 12-18-07<br>Copies to attys. of record.<br><br>HEARING/CONFERENCE RECORD, Marden, J.<br>Motion to Dismiss to be heard next scheduled motion day; motion to specify continued to February 1, 2008<br>Copies to attys. of record. |

| Date of Entry | Docket No. _____ |
|---|---|

| | |
|---|---|
| 12/26/07 | Petitioner's Memorandum in Opposition to Motion to Strike, filed.<br>s/MacLean, Esq.<br>Certificate of Service, filed. |
| 1/11/08 | DECISION AND ORDER, Jabar, J.<br>(1) Respondent's motion to dismiss Lloyd LaFountain is GRANTED.<br>(2) Respondent's motion to dismiss G. Steven Rowe is DENIED.<br>(3) Respondent's motion to dismiss Count II of petitioner's complaint is DENIED;<br>(4) Respondent's motion to strike petitioner's motion to specify future course of proceedings is DENIED.<br>Copies to attys. of record.<br>Copies to repositories. |

STATE OF MAINE                                    SUPERIOR COURT

                                                  CIVIL ACTION
KENNEBEC, ss.                                     DOCKET NO. AP-07-72
                                                  JMO - KEN - 12/2 ....

CONSTRUCTION GOSCOBEC, INC.

             Petitioner

v.                                                **DECISION AND ORDER**

ROGER TIMMONS, et al.

             Respondents

Before the court is petitioner's M.R. Civ. P. 80C petition for judicial review of the final agency action of the Maine Manufactured Housing Board (MMHB), and petitioner's independent count for enforcement of a consent agreement pursuant to 10 M.R.S. § 8003(5)(B).[1]

## FACTS

In September 2003, petitioner sold a modular home to a licensed dealer in Maine. The licensed dealer in turn sold the home to Joan McCullough (McCullough) for installation on a lot in Searsport. Petitioner delivered and installed the home, while the licensed dealer was responsible for "buttoning-up" the home (e.g., shingling, siding, connecting ducts to the air exchange system, etc.). McCullough was dissatisfied with the work done by the licensed dealer and ultimately fired him and hired others in February 2004 to complete and repair work done by the licensed dealer.

---

[1] By order dated 1/11/08, this court GRANTED respondent's motion to dismiss Lloyd LaFountain and DENIED respondent's motion to dismiss G. Steven Rowe, Attorney General for the State of Maine. Respondent's motion to dismiss Count II, petitioner's independent count, was also DENIED.

In June 2004, McCullough filed a complaint with the MMHB. The complaint detailed many problems McCullough found in the "buttoning-up" of her modular home. Amongst those problems, McCullough noted,

> The big part, though, was the roof. He closed it up and shingled it. During the winter, we had shingles blowing all over the place, the roof had bare patches. Water was running from the roof, down through the chase areas of the house, into the basement. It was a mess. . . . So, I called Goscobec as the roof is under warranty. They sent men here to fix the roof, the work done by Goyette/Mary's.

(R. 2 State's Ex. 14, p. 61.)

McCullough's complaint was resolved in December 2004 by a Consent Agreement entered into by petitioner, the MMHB, and the Attorney General's Office. The Consent Agreement found that the licensed dealer was responsible for "buttoning-up" the home, including shingling it, and had done a poor job. The Consent Agreement also found that according to a July 21, 2004 inspection by Board Inspector Patrick Ouillette (Inspector Ouillette), four warranty violations had occurred. According to the Consent Agreement, Inspector Ouillette, during a subsequent inspection on September 28, 2004, found that two of these violations had been corrected,[2] but that the others had not been corrected because "McCullough did not want to have her home further disrupted by construction." (R. 2 State's Ex. 20, p. 75.) The Consent Agreement provided for fines to be paid by petitioner and

> The Board agrees to take no further disciplinary action against the Respondent[3] based on its conduct as described herein, but the Board reserves the right to take action, including disciplinary action, which it deems appropriate and which is allowed by law, if the respondent fails to fully comply with the terms of this Consent Agreement. In taking any action, including disciplinary action, based on the Respondent's failure to fully comply with this Consent Agreement, the Board may consider the

---

[2] (State's Ex. 19, p. 71.)
[3] Petitioner was referred to as the "Respondent" for purposes of the Consent Agreement.

circumstances described in the Statement of Facts above, and any acknowledgements that Respondent has made in this Agreement.

(R. 2 State's Ex. 20, p. 76.)

In November of 2006, McCullough again complained to the MMHB about the shingles on her manufactured home.[4] Pursuant to that complaint, the MMHB Inspector Lowell Smith (Inspector Smith) inspected McCullough's home on or about November 29, 2006. Inspector Smith determined that the shingles were manufactured to withstand 60 m.p.h. winds, however the home was located on a bluff 25-feet above the ocean in Searsport and subject to winds in excess of those limits. According to Inspector Smith's investigation, two reputable building code standards listed the area in the 80-100 m.p.h. wind range. Smith also found that many of the shingles lacked the application of a small amount of glue and the seven nails which the shingle manufacturer required for proper installation. Accordingly, Inspector Smith sent petitioner an "Order of Correction and Inspection Report." Petitioner responded, asserting that the Consent Agreement had settled the issue of the installation of roofing shingles. The MMHB disagreed, and found that petitioner had violated warranties in 10 M.R.S. §§ 1404 and 1404-A, and ordered fines and damages to be paid to the Treasurer of the State of Maine, MMHB, and McCullough. Petitioner petitioned for this court's review pursuant to M.R. Civ. P. 80C, and brought an independent claim for enforcement of the Consent Agreement pursuant to 10 M.R.S. § 8003(5)(B).

## DISCUSSION[5]

---

[4] No written complaint in November of 2006 is in the record.

[5] Petitioner moved to strike the respondent's brief and the affidavits of Joan McCullough and Robert LeClair for impermissibly introducing facts after the official record had closed. See Beane v. Me. Ins. Guar. Ass'n, 2005 ME 104, ¶¶ 9-13, 880 A.2d 284, 286-87. Although this court will GRANT petitioner's motion to strike the affidavits and will ignore all references to the affidavits

*I. Enforcement of Consent Agreement — 10 M.R.S.A. § 8003(5)(B)*

Petitioner argues that the prior Consent Agreement precludes the new complaint against petitioner alleging the defective installation of roofing shingles at the McCullough home. Petitioner claims that it has a right to relief independent of the Rule 80C petition through 10 M.R.S. § 8003(5)(B), which provides that "[a] consent agreement is not subject to review or appeal, and may be modified only by a writing executed by all parties to the original consent agreement. A consent agreement is enforceable by action in Superior Court." Petitioner argues that this independent enforcement action is a different and simpler question than that required pursuant to a Rule 80C review. Whereas, petitioner reasons, a Rule 80C action asks whether the Board's administrative action occurred within proper parameters, see 5 M.R.S. § 11007, the petitioner's independent enforcement count asks whether the entire action was barred by res judicata or the Consent Agreement. Although the standard of review is highly deferential to the findings of the agency in the context of an 80C petition, the petitioner contends that enforcement of the Consent Agreement pursuant to 10 M.R.S. § 8003(5)(B) is a question of law subject to a *de novo* review. Because a finding that the Consent Agreement bars the MMHB's action against petitioner would necessarily resolve the Rule 80C petition in petitioner's favor, this issue will be addressed first.

The doctrine of res judicata prevents "the relitigation of claims that were tried or could have been tried 'between the same parties or their privies . . . in an

---

in respondent's brief, because the affidavits merely supplant facts already contained in the record, no prejudice, misconduct, or other reason merits striking respondent's entire brief. Thus, the court will DENY respondent's motion strike respondent's brief in its entirety. See Baker's Table, Inc. v. City of Portland, 2000 ME 7, ¶¶ 16-17, 743 A.2d 237, 242-43.

earlier suit on the same cause of action.'" Town of Ogunquit v. Cliff House & Motels, Inc., 2000 ME 169, ¶ 10, 759 A.2d 731, 735 (quoting Blance v. Alley, 1997 ME 125, ¶ 4, 697 A.2d 828, 829). Res judicata applies to prior administrative proceedings, provided that such proceedings contain the "essential elements of adjudication." Town of Ogunquit, 2000 ME 169, ¶ 11, 759 A.2d at 735. The "essential elements of adjudication" include:

> 1) adequate notice; 2) the right to present evidence and legal argument and to rebut opposing evidence and argument; 3) a formulation of issues of law and fact to apply rules to specified parties concerning a specified transaction; 4) the rendition of a final decision; and 5) any "other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question."

Id. (quoting Town of North Berwick v. Jones, 534 A.2d 667, 670 (Me. 1987)). The Consent Agreement, signed by petitioner, the MMHB, and the Attorney General's Office, contains these "essential elements" and is accorded res judiciata effect. See, e.g., Jasch v. Anchorage Inn, 2002 ME 106, ¶¶ 12, 17, 799 A.2d 1216, 1219-20 ("Traditionally, a consent decree is memorialized by a Board order, signed by a hearing officer, and is accorded the same finality and res judicata effect as any other decree or award of a hearing officer.").

Res judicata applies when: "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." Machias Sav. Bank v. Ramsdell, 1997 ME 20, ¶ 11, 689 A.2d 595, 599 (quoting Dep't of Human Servs. v. Comeau, 663 A.2d 46, 48 (Me. 1995)).

Here, neither party disputes that the first two elements are met. First, the same parties to the Consent Agreement were involved before the MMHB in the 2007 disciplinary action. Second, the Consent Agreement, as discussed above, constitutes a valid final judgment. Accordingly, the applicability of the doctrine of res judicata to this case rests on the third element.

Whether the third prong of the res judicata test is satisfied, that is, whether the matters presented for decision were or might have been litigated in the prior case, depends on whether the same "cause of action" was before the MMHB in the prior case. See Connecticut Nat'l Bank v. Kendall, 617 A.2d 544, 547 (Me. 1992). The Law Court has adopted the "transactional test" to determine whether the causes of action are deemed to be the same. See Draus v. Town of Houlton, 1999 ME 51, ¶ 8, 726 A.2d 1257, 1260. Pursuant to this test, causes of action are the same if they were "founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic wrong." Goumas v. State Tax Assessor, 2000 ME 79, ¶ 7, 750 A.2d 563, 565 (quoting Brown v. Osier, 628 A.2d 125, 127 (Me. 1993)). The transactional test is a "pragmatic" test, "requiring that the court analyze the factual groupings that can be aggregated for trial." Id. (quoting Beegan v. Schmidt, 451 A.2d 642, 644-45 (Me. 1982)).

The Consent Agreement provides that "[t]he Board agrees to take no further disciplinary action against the Respondent based on its conduct described herein." (State's Ex. 20 at p. 76.) Thus, whether res judicata applies depends upon whether the 2007 disciplinary action taken by the MMHB was "based upon the conduct described" in the Consent Agreement. In a general

sense, the operative facts are quite similar; problems concerning the shingles and roof. In her June 2004 complaint, McCullough complained of problems with the roof, specifically that there were "shingles blowing all over the place, the roof had bare patches." McCullough testified to these problems at the October 6, 2004 hearing, and the Consent Agreement recognized that much of the work done by the licensed dealer "buttoning up" the home was incomplete or of poor quality. (State's Ex. 20 at p. 74; see, e.g., 2004 Tr. at 70-72.) These problems, however, related to deficiencies that occurred *prior* to petitioner's warranty roof repair. Indeed, McCullough's 2004 complaint indicated that, because the roof was still under warranty at the time, the petitioner "sent men . . . to fix the roof." (See also 2004 Tr. at 294 ("The McCullough [roof] job was not installed with any tar paper, I [Bert Rioux of Goscobec] had to go back and do that . . . .").) Thus, the general references to problems with "shingles" and "roof," to which petitioner cites, do not resolve the issue in petitioner's favor. These references relate to the problems that had occurred "buttoning up" the home, which were later addressed by the petitioner's warranty repair prior to the hearing and Consent Agreement.

As it is undisputed that the warranty repair of McCullough's roof occurred prior to the hearing and Consent Agreement, any faulty warranty repair could have, in a sense, been litigated. Respondents argue, however, that neither McCullough nor the MMHB could have known about the defective warranty repair until the problems became apparent, which was well after the execution of the Consent Agreement. Essentially, respondents attempt to avoid the res judicata bar by arguing "justifiable ignorance"—that McCullough and the MMHB had no knowledge of the defective warranty repair until after the 2004 hearing and Consent Agreement.

"A justifiable ignorance of facts which, in retrospect, appear to give rise to a claim for relief will mitigate the res judicata effect of a prior judgment." Kradoska v. Kipp, 397 A.2d 562, 568 (Me. 1979). "[The] rule prohibiting multiplicity of suits has no reference to a case where the party has no knowledge of his means of redress." Id.

Petitioner relies on the following statement by McCullough to argue that problems with the shingles on the roof "were certainly not latent or hidden as of June 2004: 'The big part, though, was the roof...During the winter, we had shingles blowing all over the place, the roof had bare patches. Water was running from the roof, down through the chase areas of the house, into the basement.'" (Pet'r Br. at 12.) Petitioner's argument is misplaced. As explained above, these issues related to problems "buttoning up" the home, before petitioner's warranty roof repair. Because of the warranty repair, at the time of the 2004 hearing and Consent Agreement, McCullough had no problems with the roof. (2007 Tr. at 37-38.) Thus, this statement does not address the key issue: whether the problem was latent or hidden *after* the warranty roof repair.

Similarly unavailing is petitioner's suggestion that McCullough simply made a choice to have no further remedial work done on her home. First, McCullough chose not to correct violations on the *interior* of her home "since [her family] was in the process of moving in and since [those violations would] not affect the structural integrity of the house." (State's Exs. 18, 19.) Other *exterior* violations, including the inconsistent roof ridgeline, were remedied. More importantly, petitioner incorrectly assumes an informed decision. While McCullough indicated that she did not wish to remedy two violations revealed by Inspector Ouillette's inspection, this inspection did not reveal problems with

the petitioner's warranty repair. McCullough could not choose not to remedy a violation she was unaware of.

Although respondent argues that petitioner "affirmatively misled them" and points to petitioner's "false representation(s)" regarding the defective shingle warranty repair, it is unclear whether respondent actually contends that petitioner committed fraud. Nevertheless, it is enough that, on these facts, petitioner's purported warranty repair vitiated the need to litigate the matter in 2004. See Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986) (citing Restatement (Second) of Judgments § 26 cmt. j, which adds that the "result is the same when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action"). McCullough testified that at the time of the 2004 hearing, based on the petitioner's representations, she understood that the roof had been fixed. (2007 Tr. at 37-38 ("It was – it was represented to me as solved, so I didn't bring it up at the hearing.").) It was reasonable for McCullough and the MMHB to believe the warranty repair of her roof had been satisfactorily performed. Because of the nature of the problem,[6] neither a reasonable inspection by McCullough, nor a reasonable onsite inspection by a state inspector pursuant to a complaint would have revealed the defective shingle warranty repair. Indeed, McCullough did not notice any leaks until after the 2004 hearing. (2007 Tr. at 47, 63.) Inspector Ouillette's July 23 "Order of Correction & Inspection Report," conducted in response to McCullough's 2004 complaint, found, as one of four warranty violations, that "[t]he roof ridge line on the main house (highest roof

---

[6] Problems cited by Inspector Smith included the use of roofing shingles that were not recommended for the location and the lack of glue and nails used to properly apply the shingles.

section) does not form a reasonably straight line. The elevation of the peak shows variations in height, particularly near the end of the walls of the roof system." (State's Ex. 17 p. 68.) Inspector Ouillette's subsequent inspection on September 28 found this condition had been improved by petitioner's corrective action. Inspector Ouillette found no roof leaks during these inspections. (2004 Tr. at 217.) It is clear that, although Inspector Ouillette's inspection did reveal visible problems with the McCullough's roof, the shingling problems associated with petitioner's roof warranty repair that formed the basis of the MMHB's 2007 disciplinary action were not discovered. Only after McCullough's 2006 complaint did a subsequent inspection by Inspector Smith reveal problems with the faulty shingle installation.

Until the warranty repair problem visibly manifested itself, as it did after the Consent Agreement was reached, respondents had no reason to litigate the matter. Thus, neither enforcement of the Consent Agreement pursuant 10 M.R.S.A. § 8003(5)(B) nor the doctrine of res judicata bars the 2007 disciplinary action. See Kradoska, 397 A.2d at 568.

II. *Petition for Judicial Review: M.R. Civ. P. 80C*

Petitioner also argues that the MMHB's actions were in violation of constitutional or statutory provisions, in excess of the statutory authority of the agency, or made upon unlawful procedure in violation of 5 M.R.S. §§ 11007(1)-(3). Specifically, petitioner contends that McCullough's 2006 complaint was not timely, as the MMHB only has statutory authority to investigate complaints made "[w]ithin one year and 10 days after installation[.]" 10 M.R.S. § 9051. Petitioner also argues that McCullough's 2006 complaint, which was apparently made orally, runs afoul of 10 M.R.S.A. § 9051(2) provides that "[c]omplaints are

to be made on a form prescribed by the board providing whatever information the board deems necessary." (Pet'r Br. at 13.)

Neither of petitioner's arguments holds merit. First, because the warranty repair was done improperly, petitioner's 2003 complaint tolled the one-year and 10-day statutory limitation. See 10 M.R.S. § 9051(3). Second, petitioner's claim that McCullough's 2006 complaint was not made in writing pursuant to 10 M.R.S. § 9051(2) was not raised in the administrative proceeding before the MMHB and is therefore not properly preserved for appeal.[7] See Oliver v. City of Rockland, 1998 ME 88, ¶ 7, 710 A.2d 905, 907-08.

The entry is:

> (1) The petitioner's independent claim to enforce the 2004 Consent Agreement is DENIED;
>
> (2) The petition is DENIED and the decision of the Maine Manufactured Housing Board is AFFIRMED.

December 2, 2008

Justice Joseph Jabar

---

[7] Moreover, McCullough's testimony at the 2007 hearing that she "sent the note" to the MMHB would preclude a finding that the Board "decision" on this matter was clearly erroneous. (See 2007 Tr. at 72.)

Date Filed __11/02/2007__ ___Kennebec___ Docket No. ___AP-07-72___

County

Action ___Appeal 80C___ **J. JABAR**

Construction Goscobec Inc
103 Lebrun Street
PO Box 907
Riviere-du-Loop Quebec
G5R3Z5

Llyod P. LaFountain III, Acting Commissioner
  Dept Professional & Financial Regulartions
Roger Timmons, Charlperson
  Maine Manufactured Housing Board
G Steven Rowe
  Attorney General for the State of Maine

~~State of Maine~~                          vs.

| Offense | Attorney |
|---|---|
| Christopher K MacLean Esq<br>20 Mechanic Street<br>Camden ME  04843 | Christopher L. Mann, AAG<br>6 State House Station<br>Augusta Maine  04333-0006 |

| Date of Entry | |
|---|---|
| 11/06/07 | Filed 11/02/2007:  Petition for Review filed by Attorney MacLean. |
| 11/19/07 | Respondents and Party-in-Interest's Motion to Dismiss Independent Count and Memorandum of Law, filed. s/Christopher Mann, AAG<br>Proposed Order, filed.<br><br>Respondents and Party-in-Interest's Motion in Opposition to Motion for Stay Memorandum of Law, filed. s/Mann, AAG<br>Proposed Order, filed. |
| 11/26/07 | Motion to Specify Future Course of Proceedings, filed. s/MacLean, Esq.<br>Certificate of Service, filed. s/MacLean, Esq.<br>Proposed Order, filed.<br>Requesting hearing on Motion to Stay, filed. |
| 11/29/07 | ORDER ON MOTION FOR IMMEDIATE STAY, Mills, J.<br>Petitioner's Motion For Immediate Stay is denied.<br>Copy to attorneys. |
| 12/5/07 | Maine Manufactured Housing Board's Certified Record, filed 12/4/07. (in vault) |
| 12/7/07 | Petitioner's Memorandum in Opposition to Responents' and Party-in-Interest's Motion to Dismiss independent Count, filed. s/MacLean, Esq.<br>Certificate of Service, filed. s/MacLean, Esq.<br><br>Respondents and Party-in-Interest's Motion to Strike Petioner's Motion to Specify Future Course of Proceedings, filed. s/Mann, AAG |
| 12/18/07 | ORDER SPECIFYING FUTURE COURSE OF, Marden, J.  (12/11/07)<br>Petitioner's Motion to Specify Future Course of Proceedings is hereby granted. The time limits set forth in M.R.Civ.P. 80C shall cease to run pending the issuance of a further scheduling order by this court. A telephone hearing to determine an appropriate future course of proceedings shall be scheduled for 12-18-07<br>Copies to attys. of record.<br><br>HEARING/CONFERENCE RECORD, Marden, J.<br>Motion to Dismiss to be heard next scheduled motion day; motion to specify continued to February 1, 2008<br>Copies to attys. of record |

| Date of Entry | Docket No. _____ |
|---|---|
| 12/26/07 | Petitioner's Memorandum in Opposition to Motion to Strike, filed. s/MacLean, Esq. Certificate of Service, filed. |
| 1/11/08 | DECISION AND ORDER, Jabar, J. (1) Respondent's motion to dismiss Lloyd LaFountain is GRANTED. (2) Respondent's motion to dismiss G. Steven Rowe is DENIED. (3) Respondent's motion to dismiss Count II of petitioner's complaint is DENIED; (4) Respondent's motion to strike petitioner's motion to specify future course of proceedings is DENIED. Copies to attys. of record. Copies to repositories. |
| 1/11/08 | Letter, filed. s/MacLean, Esq. |
| 1/25/08 | Respondents and Party-in-Interest's Answer, filed. s/Mann, AAG |
| 2/12/08 | HEARING/CONFERENCE RECORD, Jabar, J. The parties have one week to agree to any stipulations beyond the official record. Petitioner shall file its brief by March 14, 2008. The Respondent shall file its brief by April 18, 2008. The Petitioner shall file its Reply brief by May 2, 2008. Oral argument will be scheduled during May, 2008 Copies to attys. of record. |
| 3/6/08 | Motion to Amend Scheduling Order, filed. s/MacLean, Esq. |
| 3/12/08 | ORDER ON MOTION TO AMEND SCHEDULING ORDER, Jabar, J. It is hereby ordered that this Court's scheduling order dated February 12, 2008 be amended as follows: Petitioner shall file it brief by April 4, 2008, Respondent shall file its brief by May 9, 2008, Petitioner shall file its brief by May 23, 2008, and Oral arguments will be scheduled during June, 2008, or the next available date after June1, 2008. Copies mailed to attys. of record. |
| 04/16/08 | Filed: 04/04/08: Second Motion to Amend Scheduling Order filed by Atty. MacLean. |
| 4/17/08 | ORDER ON MOTION TO AMEND SCHEDULING ORDER, Jabar, J. It is hereby ordered that this Court's scheduling order dated February 12, 2008 and Order dated March 12, 2008 be amended as follows: Petitioner shall file its brief by May 4, 2008, Respondnent shall file its brief by June 8, 2008, Petitioner shall file its brief by June 22, 2008 and Oral arguments will be scheduled the next available date after June 22, 2008 Copies mailed to attys. of record. |
| 5/6/08 | Motion for Enlargement of Time, filed. s/MacLean, Esq. Proposed Order, filed. |
| 5/12/08 | ORDER ON MOTION TO ENLARGE TIME, Jabar, J. GRANTED. It is hereby ORDERED that Petitioner shall file Petitioner's brief by May 9, 2008. Copies to attys.of record. |
| 5/12/08 | Petitioner's Brief in M.R.CIV.P. 80C Appeal and Independent Count, filed. s/MacLean, Esq. |

| Date of Entry | Construction Goscobec, Inc. vs. Roger Timmons, et al    Docket No.   AP07-72 |
|---|---|
| 6/2/08 | Respondent's and Party-in-Interest's 80C Brief, filed. s/Mann, AAG |
| | Affidavit of Robert V. LeClair, filed. s/LeClair |
| 6/11/08 | Petitioner's Motion to Strike Respondent's Brief and Affidavits of Joan McCullough and Robert V. LeClair, filed. s/MacLean, Esq. |
| | Certificate of Service, filed. s/MacLean, Esq. |
| | Proposed Order, filed. |
| 6/16/08 | Respondent's and Party-in-Interest's Motion Opposing Petitioner's Motion to Strike Respondent's Brief, filed. s/Mann, AAG |
| 6/23/08 | Petitioner's Reply to Respondent's and Party-in-Interest's 80C brief, filed. s/MacLean, Esq. |
| | Notice of setting for 8/5/08 sent to attorneys of record. |
| 7/14/08 | Motion to Continue, filed. s/MacLean, Esq. |
| | Proposed Order, filed. |
| 7/24/08 | ORDER ON MOTION TO CONTINUE, Jabar, J. |
| | It is hereby ORDERED that the oral argument scheduled for August 5, 2008 in the above matter be continued until the next available date. This shall be scheduled for time during the months of August or September. |
| | Copies mailed to attys. of record. |
| | Notice of setting for 9/2/08 sent to attorneys of record. |
| 12/2/08 | DECISION AND ORDER, Jabar, J. |
| | (1) The petitioner's independent claim to enforce the 2004 Consent Agreement is DENIED; |
| | (2) The petition is DENIED and the decision of the Maine Manufactured Housing Board is AFFIRMED. |
| | Copies mailed to attys. of record. |
| | Copies mailed to repositories |
| | Notice of removal of record mailed to atty. |